## OLIN CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7766.

Circuit Court of Appeals, Seventh Circuit.

May 22, 1942.

James O. Wynn, of New York City, and Ernest F. Staub, of Chicago, Ill., for petitioner.

J. P. Wenchel and Claude R. Marshall, both of Washington, D. C., Bureau of Internal Revenue, Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and Carlton Fox, Sp. Assts. to Atty. Gen., for respondent.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The petitioner-appellant is a common law trust which was organized in 1924. The units of beneficial interest of the trust are all owned by F. W. Olin, his wife, Mary, and his two sons, Spencer and John. The respondent levied a deficiency assessment against the petitioner for the calendar years 1932 and 1933, pursuant to Section 104 of the Revenue Act of 1932, 47 Stat. 195, 26 U.S.C.A. Int.Rev.Acts, page 508, the pertinent provisions of which are set forth in the footnote.[1] The Board of Tax Appeals sustained the position of the Commissioner, with a recomputation of the tax which is not questioned.

The Board of Tax Appeals found that the petitioner had been availed of in 1932 and 1933 for the purpose of preventing the imposition of the taxes on the owners of the beneficial interest in the petitioner, and that the petitioner had in said years permitted its gains and profits to accumulate beyond the reasonable needs of the business. The latter finding gives rise, under the statute, to a presumption that the accumulations were for the purpose of escaping the tax.

The sole question before us is whether the findings of the Board are sustained by sufficient evidence. We have nothing to do with weighing the evidence, drawing inferences therefrom, or making findings of fact. Helvering v. National Grocery Co., 304 U.S. 282, 294, 58 S.Ct. 932, 82 L.Ed. 1346; Helvering v. Rankin, 295 U.S. 123, 131, 132, 55 S.Ct. 732, 79 L.Ed. 1343.

F. W. Olin had been engaged in the manufacture of powder and expanded into the business of manufacturing high explosives also. To promote the powder business, he gained, through Western Cartridge Company, which he controlled, the ownership of the Winchester Repeating Arms Co. The manufacturer of powder, high explosives, and arms was the chief interest of the Olin family, and the petitioner was organized primarily to help them control their companies engaged in these enterprises.

We shall not attempt to set forth the assets and liabilities of the petitioner, and a breakdown of them. Neither shall we set forth the many business transactions carried on between the petitioner and the Olins and the corporations in which they were interested. We observe that the petitioner was engaged in no business except to hold the securities and assets transferred to it by the Olins; to collect dividends from the corporations whose stock it held, and which stock otherwise would have been held by the Olins and the dividends paid directly to them; to loan money to the Olins; to

---

[1] "§ 104. Accumulation of Surplus to Evade Surtaxes. (a) If any corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders through the medium of permitting its gains and profits to accumulate instead of being divided or distributed, there shall be levied, collected, and paid for each taxable year upon the net income of such corporation a tax equal to 50 per centum of the amount thereof, which shall be in addition to the tax imposed by section 13 and shall be computed, collected, and paid upon the same basis and in the same manner and subject to the same provisions of law, including penalties, as that tax.

"(b) The fact that any corporation is a mere holding or investment company, or that the gains or profits are permitted to accumulate beyond the reasonable needs of the business, shall be prima facie evidence of a purpose to escape the surtax."

(The phrase "the surtax" was stricken out by the National Industrial Recovery Act of June 16, 1933, and the phrase "any internal-revenue tax" substituted therefor. The amendment is, however, without significance in this case and will not be discussed further.)

invest the funds of the trust; and to provide funds for the Olins to promote the business enterprises they were interested in. The petitioner had no liabilities of any substantial amount except to the Olins, the holders of the beneficial interest of the petitioner. The indebtedness due the petitioner was for the most part from the Olins, and throughout the life of the petitioner, the petitioner was, with the exception of one year, always indebted to the Olins on the balance of their accounts. The petitioner had no funded debt and its assets were for the most part liquid. It maintained no separate office and had only one part-time employee, who kept its accounts and whose salary was $300 per year. The three officers of the petitioner received a salary of $300 per year each. The total assets of the petitioner at the end of 1932 were $5,211,849.16 and at the end of 1933, $5,370,117.71, while the surplus at the end of 1931 was $2,326,939.57, at the end of 1932, $2,491,551.91, and at the end of 1933, $2,699,281.96. The total net income from the petitioner organization from 1924 until the end of 1933 was approximately four million dollars, exclusive of a one hundred per cent dividend in preferred stock declared by Western Cartridge Company in 1926 and not shown on the books until 1936, when it was set up at a value of $1,472,400. The reasons for the increase in the surplus for 1933 over that for 1932 and for 1932 over that for 1931 were not apparent to the Board.

As respondent argued, the sum and substance of the transaction was to make the petitioner a pocketbook for the Olins, into which they could siphon income and then withdraw it to promote their enterprises, without them having to pay the surtax that would have been assessed had the dividends been paid directly to them.

The petitioner did not have to suffer the imposition of the high tax in this case. There was an escape clause in the statute.[2] The Olins, who were the owners of the beneficial interest in the petitioner, did not see fit to take advantage of this escape clause but, in the opinion of the Board, preferred to take their escape in taxes.

█ Whether the petitioner was availed of in these years 1932 and 1933 to escape taxation and whether the accumulation of profits and gains was unreasonable in the light of the petitioner's needs, were matters of fact, the finding of which is committed by law to the Board of Tax Appeals. Such a finding requires the exercise of judgment upon a consideration of all the facts and circumstances in the case. After such a consideration, the Board reached the finding that the petitioner was availed of to escape the tax and that the accumulation of gains and profits was unreasonable.

█ We cannot say that the evidence in this case leads, as a matter of law, to the opposite conclusion. To do so, there would have to be no room for the exercise of discretion or judgment by the Board upon the facts. The facts would have to lead inevitably to but one conclusion. We think there was no such compulsion by the facts in this case. The evidence in the record challenged the discretion and judgment of the Board. The law gave the Board the fact-finding function, and we are powerless to take it away and must affirm its action when there is substantial evidence to sustain the Board's finding. Helvering v. National Grocery Co., supra.

In our opinion, there is substantial evidence to support the Board's finding and its decision is affirmed.

---

[2] Sec. 104 of the Revenue Act of 1932, 47 Stat. 195, provides: " * * * (d) The tax imposed by this section shall not apply if all the shareholders of the corporation include (at the time of filing their returns) in their gross income their entire distributive shares, whether distributed or not, of the net income of the corporation for such year. Any amount so included in the gross income of a shareholder shall be treated as a dividend received. Any subsequent distribution made by the corporation out of the earnings or profits for such taxable year shall, if distributed to any shareholder who has so included in his gross income his distributive share, be exempt from tax in the amount of the share so included."