BOYLE FUEL COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

SPOKANE HEATING COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2608–66, 2609–66.   Filed November 4, 1969.

*Francis J. Butler* and *Lynn M. Seelye,* for the petitioners.
*Harold E. Patterson,* for the respondent.

BRUCE, *Judge:* Respondent determined deficiencies in corporation income tax of Boyle Fuel Co. for fiscal years ended April 30, and of Spokane Heating Co. for fiscal years ended January 31, as follows:

| Docket No. | Corporation | Fiscal year 1964 | Fiscal year 1965 |
|---|---|---|---|
| 2608–66 | Boyle Fuel Co | $33,192.30 | $37,176.68 |
| 2609–66 | Spokane Heating Co | 9,897.67 | 20,791.58 |

The sole issue remaining for decision is whether respondent erred in determining that the deductions claimed on the petitioners' returns for salaries of officers were excessive, and, if so, in what amounts.

#### FINDINGS OF FACTS

The stipulation of facts and exhibits attached thereto are incorporated by reference.

Boyle Fuel Co. is a corporation organized under the laws of the State of Washington in 1955. Its principal office at the time of filing petition herein was in Spokane, Wash. It is engaged in the business of selling fuel oil, coal, and wood at retail and wholesale, and in the installation, service, and repair of furnaces.

Spokane Heating Co. is a corporation organized under the laws of the State of Washington in 1956. It is a wholly owned subsidiary of Boyle Fuel. Its principal office at the time of filing the petition herein was in Spokane. It is engaged in the wholesale distribution of gasoline, diesel fuels, and lubricants under a contract with Continental Oil Co. obtained in 1962. Prior thereto it was practically dormant.

Both corporations filed Federal corporation income tax returns with the district director of internal revenue at Tacoma, Wash. Boyle Fuel filed returns for fiscal years ended April 30 in 1964 and 1965. Spokane Heating filed returns for fiscal years ended January 31 in 1964 and 1965.

Leon J. Boyle operated as a sole proprietor under the name of Boyle Fuel Co. prior to 1955. Upon incorporation as Boyle Fuel Co., the issued stock consisted of 24,060 shares with a par value of $10 per share issued to Boyle. Boyle sold approximately 7 percent of the stock to each of three key employees, Robert L. Ward, Charles E. Tinsley, and Albert F. Lafky. In subsequent years Boyle sold additional shares from his own shareholdings to each of these shareholders until on April 30, 1960, each owned 16 percent of the total shares outstanding. In the fiscal year ended in 1963 Boyle sold all his remaining shares to them and thereafter Ward, Tinsley, and Lafky each owned one-third of the stock.

Boyle was president of Boyle Fuel until April 30, 1961. Thereafter he was chairman of the board of directors until April 30, 1964. Ward became a vice president of Boyle Fuel in fiscal 1960, and president in fiscal 1962. Tinsley became a vice president in fiscal 1960. Lafky has been secretary-treasurer since 1956.

The officers of Spokane Heating in the fiscal years 1963–65 were Boyle, chairman; Ward, president; Tinsley, vice president; and Lafky, secretary-treasurer.

On May 2, 1955, Boyle Fuel entered into identical written employment agreements with Ward, Tinsley, and Lafky whereby each was to receive a base salary to be determined by the board of directors, subject to review or change at any time, and additional compensation to be computed at the end of the fiscal year. The additional compensation was designated "Profit-Sharing." It was to be computed from the earnings of the corporation at 15 percent of 75 percent of the net profits for the fiscal year and was to be paid by July 15 following the end of the fiscal year.

On October 25, 1956, similar agreements were entered into between Boyle Fuel and Boyle, Ward, Tinsley, and Lafky, in which the profit-sharing payable to each was to be computed at 25 percent of 75 percent of the net profits.

As of June 1, 1959, the board of directors of Boyle Fuel discontinued the base salary of Boyle and effected a new employment agreement whereby Boyle was to share in the profits at 25 percent of 75 percent of the net profits for the fiscal years ending in 1960 to 1964 only. He was also to receive as base salary such amount, if any, as the board might from time to time determine. No such base salary was at any time determined. In the event of his death prior to April 30, 1964, Boyle's share of profits was to be paid to his heirs or legal representatives until that date.

On March 19, 1964, Ward, Tinsley, and Lafky, as "Management Committee" of Boyle Fuel, adopted a resolution as follows:

BE IT RESOLVED: That pursuant to a prior understanding the base salaries of R. L. Ward, C. E. Tinsley, and A. F. Lafky be adjusted for the fiscal year ended April 30, 1964, by increasing the amount as to each in the amount of $5,000.00 to be accrued on April 30, 1964, and to be paid immediately after May 1, 1964. It is the intention that this adjustment of base salaries shall not effect [sic] profit-sharing as defined in various employment agreements now in effect. It is therefore directed that the base salary adjustment totaling $15,000.00 be added back to net profits before computing profit-sharing for the year ending April 30, 1964.

On June 3, 1964, new identical employment agreements were entered into between Boyle Fuel and Ward, Tinsley, and Lafky. These three were then all the stockholders and were all the directors of Boyle Fuel. In the new agreements a base salary for each was to be determined by the board, and additional compensation or profit-sharing for each was computed at 32 percent of 90 percent of "Net Profits Before Profit-Sharing." The board declared a dividend of 30 cents per share payable June 4, 1964.

On April 16, 1965, the directors of Boyle Fuel declared a dividend of 50 cents per share payable April 19, 1965.

The several employment agreements between Boyle Fuel and Ward, Tinsley, or Lafky provided that in the event of the death of the employee a prorata share of the profit-sharing for the current year would be paid to his heirs or estate.

During the fiscal year ended in 1963, the base salary paid by Boyle Fuel to Ward, Tinsley, and Lafky was $7,800 each. In the year ended in 1964 the base salary was increased to $12,800 each. For the year ended in 1965 it was reduced to $12,000 each.

Since 1956 Boyle Fuel has paid the same amounts of salaries and profit-sharing to each of Ward, Tinsley, and Lafky. The amounts paid to Boyle and to the other officers were as follows:

| Fiscal year | Boyle | Ward, Tinsley, Lafky (each) | Fiscal year | Boyle | Ward, Tinsley, Lafky (each) |
|---|---|---|---|---|---|
| 1956 | $33,141 | $17,591 | 1961 | 27,418 | 34,918 |
| 1957 | 35,104 | 18,279 | 1962 | 28,491 | 36,291 |
| 1958 | 30,905 | 17,105 | 1963 | 25,352 | 33,153 |
| 1959 | 37,896 | 25,296 | 1964 | 24,826 | 37,626 |
| 1960 | 35,703 | 40,253 | 1965 | --- | 48,081 |

After 1959, Leon J. Boyle reduced his active management of the business of Boyle Fuel and Spokane Heating and took extended vacations in Arizona.

On February 1, 1962, Spokane Heating entered into written employment agreements with Boyle, Ward, Tinsley, and Lafky. The agreements provided that each should receive as base salary such amount,

if any, as the board of directors might determine and that each was to receive as remuneration 25 percent of 75 percent of the "Net Profits Before Profit-Sharing." The agreement with Boyle provided that in case of his death or disability to work prior to January 31, 1965, the payments would be made to him or to his legal representatives or heirs until that date. His sharing in profits was to continue only until January 31, 1965. The agreements with Ward, Tinsley, and Lafky provided that in case of death payment of a prorata share of profit for the current year would be made to his heirs or estate.

Spokane Heating paid no base salaries to its officers. In the fiscal years ended in 1963, 1964, and 1965 it paid as compensation a share of profits in the following amounts each to Boyle, Ward, Tinsley, and Lafky:

| Fiscal year | Amount |
| --- | --- |
| 1963 | $9,432.00 |
| 1964 | 8,587.00 |
| 1965 | 12,930.21 |

During the fiscal years ended April 30, 1964, and April 30, 1965, Boyle Fuel sold and delivered 3,692,643 gallons and 3,908,495 gallons of fuel oil, respectively.

On or about March 26, 1962, Spokane Heating entered into an agency agreement with Continental Oil Co. During the fiscal years ended January 31, 1964, and January 31, 1965, Spokane Heating sold approximately 3,600,000 and 4,006,745 gallons of fuel oil, respectively, for its own account. In addition, it handled for the 2 years stated, approximately 4 million gallons each year for the account of Continental Oil Co. as its commission agent.

In the fiscal years ended January 31, 1964, and January 31, 1965, 95.4 percent and 95.6 percent of the fuel oil sold by Spokane Heating for its own account was sold to its parent, Boyle Fuel.

Boyle Fuel, during the taxable years and for several years before, sponsored and produced a live television program of one-half hour weekly on Saturday evenings using amateur child talent and advertising Boyle Fuel. This was managed by Ward with the assistance of Lafky and occupied most of their time on Saturdays and some other time each week.

During the taxable years Ward's duties were primarily as head of the sales departments of the companies and director of advertising. The duties of Tinsley were related to deliveries, maintenance, and operation of vehicles, maintaining inventories of coal and oil, estimating bids for supplies, and care of plant and buildings. The duties of Lafky related principally to finances, accounts and records, and assisting with advertising.

Boyle Fuel employed some 25 to 45 employees in the taxable years and had some 30 to 32 vehicles in operation. It maintained coal supplies, scales, bulk oil plant, and a garage.

Spokane Heating had from two to eight employees and sometimes borrowed employees from Boyle Fuel. It owned a few trucks and borrowed others from Boyle Fuel.

In the years preceding the taxable years, natural gas became available for heating in Spokane and the use of coal and oil declined. Boyle Fuel lost a substantial number of accounts for this reason.

Spokane Heating has declared no dividends since incorporation.

Boyle Fuel declared no dividends prior to fiscal 1962, but declared dividends of 50 cents per share in fiscal 1962, 25 cents per share in fiscal 1964, and a total of 80 cents per share in fiscal 1965.

The highest paid employee of Boyle Fuel during the taxable years, other than the officers, was the office manager, who was paid $8,400 per year. Neither Boyle Fuel nor Spokane Heating had any profit-sharing plan for employees other than the officers.

The following table shows gross sales and profits, total income, officer's compensation, net profit before and after officers' compensation, other wages and dividends paid for Boyle Fuel Co. from date of incorporation through the fiscal year ended April 30, 1965:

| FYE *Apr.* 30— | Gross sales | Gross profit from sales | Total income | Officers' [1] bonuses and salaries |
|---|---|---|---|---|
| 1956 | $1,707,299.16 | $437,490.19 | $442,233.60 | $53,183.44 |
| 1957 | 1,318,208.21 | 367,955.03 | 370,496.39 | 57,584.06 |
| 1958 | 1,143,878.55 | 345,786.88 | 347,701.66 | 52,210.22 |
| 1959 | 1,107,494.23 | 360,799.90 | 363,953.55 | 67,392.28 |
| 1960 | 1,340,301.88 | 445,892.61 | 451,463.96 | 156,813.52 |
| 1961 | 1,150,144.04 | 397,253.41 | 402,568.94 | 132,172.80 |
| 1962 | 1,150,144.04 | 421,224.14 | 433,096.09 | 137,366.00 |
| 1963 | 1,089,505.52 | 393,340.80 | 404,328.63 | 124,811.80 |
| 1964 | 1,071,419.24 | 396,079.26 | 409,683.63 | 137,705.48 |
| 1965 | 1,159,632.24 | 421,242.14 | 433,004.45 | 144,245.76 |

| | Net profit before officers' salaries and bonuses | Net profit after officers' salaries and bonuses | Other wages | Dividends paid |
|---|---|---|---|---|
| 1956 | $109,854.08 | $56,670.64 | $173,954.92 | |
| 1957 | 74,918.28 | 17,334.22 | 149,967.63 | |
| 1958 | 67,820.90 | 15,610.74 | 139,679.91 | |
| 1959 | 91,098.09 | 23,705.81 | 152,083.36 | |
| 1960 | 198,745.92 | 41,932.40 | 115,204.45 | |
| 1961 | 166,839.69 | 34,666.89 | 112,320.72 | |
| 1962 | 173,267.92 | 35,901.92 | 127,744.73 | $12,030.00 |
| 1963 | 155,847.01 | 31,035.21 | 117,407.52 | |
| 1964 | 153,839.71 | 16,134.23 | 123,441.91 | 6,015.00 |
| 1965 | 159,133.85 | 14,888.09 | 133,000.24 | [2] 19,248.00 |

[1] Prior to 1960 there were five salaried officers including Mrs. E. S. Boyle. From 1960 through 1964 there were four: Leon J. Boyle, R. L. Ward, C. E. Tinsley, and A. F. Lafky. Mr. Boyle drew no salary in 1965.
[2] Dividend of $7,218 declared June 19, 1964, and dividend of $12,030 declared Apr. 16, 1965, which was after the initial contact of respondent's agent on Feb. 9, 1965.

Similar information is shown in the following table for Spokane Heating Co. for its fiscal years ended January 31, 1961 to 1965, inclusive:

| FYE Jan. 31— | Gross sales | Gross profit | Total income | Officers' compensation |
|---|---|---|---|---|
| 1961 | $1,777.82 | $53.36 | $1,124.07 | |
| 1962 | 24,654.96 | 1,521.78 | 2,030.89 | |
| 1963 | 282,777.99 | 35,330.43 | 77,921.17 | $37,728.32 |
| 1964 | 415,791.59 | 35,068.23 | 81,007.95 | 34,348.04 |
| 1965 | 454,079.32 | 47,575.88 | 109,422.24 | 51,720.84 |

| | Net profit before officers' compensation | Net profit after officers' compensation | Other wages | Dividends paid |
|---|---|---|---|---|
| 1961 | $652.42 | $652.42 | | |
| 1962 | 916.05 | 916.05 | | |
| 1963 | 50,208.80 | 12,480.48 | $17,290.08 | |
| 1964 | 45,797.38 | 11,449.34 | 25,078.97 | |
| 1965 | 68,961.15 | 17,240.31 | 29,273.34 | |

A comparison of officers' compensation to total income and net profit before salaries for Boyle Fuel Co. for the fiscal years ended April 30, 1960 through 1965, and for Spokane Heating Co. for the fiscal years ended January 31, 1963 through 1965, is shown by the following charts:

| FYE | (1) Total income | (2) Net profit before salaries | (3) Officers' compensation | (4) Dividends | (5) Percent (col. (3) of col. (1)) | (6) Percent (col. (3) of col. (2)) |
|---|---|---|---|---|---|---|
| **Boyle Fuel Co.** | | | | | | |
| *Apr. 30—* | | | | | | |
| 1960 | $451,463 | $198,745 | $156,813 | | 34.7 | 78.9 |
| 1961 | 402,568 | 166,838 | 132,172 | | 32.8 | 79.2 |
| 1962 | 433,096 | 173,267 | 137,366 | $12,030 | 31.7 | 79.3 |
| 1963 | 404,328 | 155,847 | 124,812 | | 30.9 | 80.1 |
| 1964 | 409,683 | 153,839 | 137,705 | 6,015 | 33.6 | 89.5 |
| 1965 | 433,004 | 159,133 | 144,245 | 19,248 | 33.3 | 90.0 |
| **Spokane Heating Co.** | | | | | | |
| *Jan. 31—* | | | | | | |
| 1963 | $77,921 | $50,208 | $37,728 | | 48.4 | 75.0 |
| 1964 | 81,007 | 45,797 | 34,348 | | 42.4 | 75.0 |
| 1965 | 109,422 | 68,960 | 51,720 | | 47.3 | 75.0 |

In each of the fiscal years ended in 1960 to 1965, inclusive, the amount paid by Boyle Fuel as officers' compensation exceeded all other wages paid.

In each of the fiscal years ended in 1963 to 1965, inclusive, the amount paid by Spokane Heating as officers' compensation exceeded all other wages paid.

The following schedule shows the amounts of compensation of each officer claimed as a deduction, and the amounts thereof allowed and disallowed by respondent:

BOYLE FUEL

| Officer | Deduction | Allowed | Disallowed |
|---|---|---|---|
| | *Fiscal year 1964* | | |
| Ward | $37,626.37 | $33,400 | $4,226.37 |
| Tinsley | 37,626.37 | 15,400 | 22,226.37 |
| Lafky | 37,626.37 | 19,400 | 18,226.37 |
| Boyle | 24,826.37 | 1,800 | 23,026.37 |
| Totals | 137,705.48 | 70,000 | 67,705.48 |
| | *Fiscal year 1965* | | |
| Ward | $48,081.92 | $34,000 | $14,081.92 |
| Tinsley | 48,081.92 | 16,000 | 32,081.92 |
| Lafky | 48,081.92 | 20,000 | 28,081.92 |
| Totals | 144,245.76 | 70,000 | 74,245.7 |

SPOKANE HEATING

| Officer | Deduction | Allowed | Disallowed |
|---|---|---|---|
| | *Fiscal year 1964* | | |
| Ward | $8,587.01 | $5,000 | $3,587.01 |
| Tinsley | 8,587.01 | 2,200 | 6,387.01 |
| Lafky | 8,587.01 | 2,800 | 5,787.01 |
| Boyle | 8,587.01 | None | 8,587.01 |
| Totals | 34,348.04 | 10,000 | 24,348.04 |
| | *Fiscal year 1965* | | |
| Ward | $12,930.21 | $5,000 | $7,930.21 |
| Tinsley | 12,930.21 | 2,200 | 10,730.21 |
| Lafky | 12,930.21 | 2,800 | 10,130.21 |
| Boyle | 12,930.21 | None | 12,930.21 |
| Totals | 51,720.84 | 10,000 | 41,720.84 |

Reasonable compensation for the services of Boyle, Ward, Tinsley, and Lafky to petitioners was as follows:

| | Boyle Fuel | | Spokane Heating | |
|---|---|---|---|---|
| | Fiscal year 1964 | Fiscal year 1965 | Fiscal year 1964 | Fiscal year 1965 |
| Boyle | $1,800 | | | |
| Ward | 33,400 | $34,000 | $5,000 | $5,000 |
| Tinsley | 22,500 | 22,500 | 3,500 | 3,500 |
| Lafky | 22,500 | 22,500 | 3,500 | 3,500 |

### OPINION

The only question presented is the reasonableness of the amounts paid by each of the petitioner corporations as compensation to each of it officers for their respective fiscal years ended in 1964 and 1965.

Respondents disallowed in unequal amounts a portion of the deductions claimed by each of the petitioners for compensation paid each of its officers in their fiscal years ended in 1964 and 1965.

Petitioners contend that the full amounts of the compensation paid each of their officers were reasonable and that respondent's determinations are arbitrary and unreasonable. They further contend that the services of Ward, Tinsley, and Lafky were of equal value and that respondent should have allowed as reasonable salary for the services of Tinsley and Lafky amounts equal to that allowed for the services of Ward.

Section 162(a)(1) of the Internal Revenue Code of 1954 provides that in computing its taxable income a corporation shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered."

The burden of proving reasonableness is upon the petitioners, *Botany Worsted Mills* v. *United States*, 278 U.S. 282, and the question of what constitutes reasonable compensation for personal services is essentially a question of fact to be determined from all the facts and circumstances of the particular case, *Geiger & Peters, Inc.*, 27 T.C. 911 (1957). Among the factors to be considered, but not necessarily with equal importance, are "the employee's qualifications; the nature, extent and scope of the employee's work; the size and complexities of the business; a comparison of salaries paid with the gross income and the net income; the prevailing general economic conditions; comparison of salaries with distributions to stockholders; the prevailing rates of compensation for comparable positions in comparable concerns; the salary policy of the taxpayer as to all employees; and in the case of small corporations with a limited number of officers the amount of compensation paid to the particular employee in previous years." *Mayson Mfg. Co.* v. *Commissioner*, 178 F. 2d 115, 119 (C.A. 6, 1949). See also 4A Mertens, Law of Federal Income Taxation, sec. 25.69 *et seq.* (1966 rev.).

In the *Mayson Mfg. Co.* case the court also stated: "The action of the Board of Directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper." This presumption, however, is of no weight where, as here, the directors are the sole stockholders and are fixing their own salaries. *J. Warren Leach*, 21 T.C. 70 (1953).

We have carefully considered all of the above factors and are satisfied that the compensation paid by the petitioners to their officers for the taxable years ended in 1964 and 1965 was unreasonable and excessive to the extent such compensation exceeded the amounts found as reasonable in our Findings of Fact.

It does not appear that Ward, Tinsley, or Lafky possessed any unusual or special qualifications for the work they performed other than that they were efficient, industrious, and cooperative in carrying out their respective assignments. The nature, scope, and extent of their duties were not exceptional and were the same duties they had performed for a number of years under the direction of Boyle. The business of the petitioners was not complex or technical and was not too large to be easily managed. The competition resulting from the increased use of natural gas for domestic and commercial heating purposes did not justify the increases in compensation. The element of competition is present in most businesses and was not uncommon in the coal and oil supply business as evidenced by the large number of companies engaged in that business in the Spokane area.

Prior to 1962, Boyle Fuel paid no dividends and only nominal amounts in 1962, 1964, and 1965. No dividends were ever declared by Spokane Heating. For a number of years prior to and including the taxable years the amounts paid their officers by each of the petitioner corporations has substantially exceeded the total wages paid other employees. The highest amount paid any individual employee not an officer or stockholder was $8,400 paid the office manager of Boyle Fuel.

Petitioners offered no evidence whatever as to rates of compensation paid by comparable concerns. Respondent presented testimony of a former owner of a corporation which had been engaged in the fuel business in Seattle in 1962 and 1963, the gross sales of which approximated those of the two petitioners herein. The president was paid $35,700, the vice president in charge of sales $11,663, the vice president in charge of operations $14,861. The total compensation of these three officers was 25 percent of gross income and approximately equal to the amount of net income. Other salaries and wages were four times the compensation of such officers. We find the comparison of little value in the present case, however, particularly in so far as the compensation paid the individual officers of the petitioners is concerned. In addition to being located in a different community, the president of the Seattle company owned all its stock and there is no showing of the extent to which the other officers participated in the overall management. The company did not handle its own service department or its own advertising; it did not maintain its own repair or maintenance shops; and it used subcontractors for coal deliveries.

The most significant factor in the present case is the profit-sharing arrangement, the details of which are set forth in the employment contracts referred to in our Findings of Fact, whereby, in addition to the base salaries paid them by Boyle Fuel, the officers of both petitioners, who were equal owners of all the stock of Boyle Fuel and

through it of Spokane Heating, were each paid a percentage of the net profits. For the fiscal years involved the total amount of the salaries and percentage of profits paid its officers by Boyle Fuel amounted to 33.6 percent and 33.3 percent, respectively, of gross income, and to 89.5 percent and 90 percent, respectively, of net profits. The total amount of the profits paid its officers by Spokane Heating for the fiscal years involved amounted to 42.4 percent and 47.3 percent, respectively, of its total income and 75 percent of net profits in each year.

It is not uncommon for a corporation to pay key employees a bonus or percentage of earnings as well as a basic salary. The form or method of fixing compensation is not of itself decisive as to deductibility. Fundamentally, however, whether paid on a contingent basis or at a flat rate, the test of deductibility of compensation payments is whether they are reasonable and were in fact payments for services actually rendered rather than tax-motivated substitutes for distributions of earnings to stockholders. See secs. 1.162–7 and 1.162–9, Income Tax Regs. Where a substantial portion of the payments are contingent upon the earnings of the corporation, they should be closely scrutinized. *Heil Beauty Supplies* v. *Commissioner*, 199 F. 2d 193, 194 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court.

Here, the payments in question, which included 90 percent of the net profits, were computed after the close of petitioners' respective fiscal years, based upon percentages which the recipients, who owned or controlled all of the stock of both corporations, had voted themselves. The employment contracts described the arrangement as "profit-sharing." Moreover, the provisions for payment of his prorata share of the profits to the heirs or personal representatives of each officer in the event he died prior to the end of a fiscal year (or prior to the end of the contract period in the case of Boyle) are characteristic of distributions of earnings rather than compensation for services actually performed. There is no evidence or contention that any of the payments were for past services.

The amounts claimed as deductions by each of the petitioners for compensation paid to each of their officers and the amounts thereof allowed and disallowed by respondent are shown in the schedules set forth in our Findings of Fact. In general we agree with respondent that the overall amounts paid as officers' compensation by each of the petitioners for each of the taxable years were unreasonable and excessive. It is necessary, however, that we determine the extent to which the amount paid each individual officer for each of the taxable years was unreasonable and excessive.

*Boyle.*—Prior to its incorporation in 1955, Leon J. Boyle had operated the business of Boyle Fuel as sole proprietor. Upon incorporation all of its outstanding stock, consisting of 24,060 shares, was issued to Boyle. In 1955, Boyle sold 7 percent of the stock to each of his three key employees, Ward, Tinsley, and Lafky. In subsequent years he sold them additional equal amounts of stock. By April 30, 1960, Ward, Tinsley, and Lafky each owned 16 percent of the total shares outstanding and Boyle owned the remaining 52 percent. Later, in the fiscal year ended in 1963, he sold them all of his remaining shares and thereafter Ward, Tinsley, and Lafky each owned one-third of the stock of Boyle Fuel and through it the stock of Spokane Heating, the wholly owned subsidiary of Boyle Fuel.

In 1959, Boyle began to reduce his active management of Boyle Fuel. He took extended vacations in Arizona during the winter months and left the management to Ward, Tinsley, and Lafky who acted together as a "Management Committee." He had no specific duties but kept in touch with the business through telephone calls and correspondence. In 1959, he also agreed to the termination of his base salary and to the receipt of 25 percent of 75 percent of the net profits for the fiscal years ending in 1960 through 1964 only. Also, Boyle's position as president terminated on April 30, 1961, and he was succeeded by Ward. Thereafter, he was chairman of the board of directors of Boyle Fuel until April 30, 1964, and of Spokane Heating during its fiscal years ended in 1963, 1964, and 1965. Other than being chairman of the board there is no showing herein that Boyle performed any services for Spokane Heating during the taxable years 1964 and 1965.

Respondent determined that $1,800 was reasonable compensation for the services of Boyle to Boyle Fuel in the Taxable year ended in 1964, and disallowed the deduction claimed by the petitioner, Boyle Fuel, in excess of that amount. Respondent also determined that none of the amounts paid Boyle by Spokane Heating for the taxable years ended in 1964 and 1965 represented reasonable compensation and disallowed the deductions claimed therefor by the petitioner Spokane Heating in both of said years. We sustain respondent's determinations in both these respects.

*Ward, Tinsley, and Lafky.*—As indicated in the schedules set forth in our findings, Boyle Fuel paid each of its officers, Ward, Tinsley, and Lafky, equal amounts for each of the taxable years, to wit: $37,626.37 for the fiscal year ended in 1964 and $48,081.92 for the fiscal year ended in 1965. Spokane Heating also paid equal amounts to Ward, Tinsley, and Lafky for each of the taxable years, to wit: $8,587.01 for the fiscal year ended in 1964 and $12,930.21 for the fiscal year ended

in 1965. Respondent disallowed in unequal amounts the deductions claimed for such payments. Respondent determined that in each of the taxable years reasonable compensation for Ward was $33,400 and $34,000, respectively; for Tinsley $15,400 and $16,000, respectively; and for Lafky $19,400 and $20,000, respectively.

Respondent, on brief, argued that Ward, by reason of being president and supervising the television advertising program, was entitled to more compensation than either Tinsley or Lafky, and that Lafky's duties as secretary-treasurer and assisting in the television program justified the payment of more compensation to him than to Tinsley.

In our opinion, the facts of the present case do not justify the importance attributed to being president or to the advertising program. For organizational purposes, it was necessary that one of the equal stockholders be designated as president. That, of itself, did not render his service of such greater value to the corporation. For efficiency of operation, it was also necessary that each of the three officers be assigned different duties and responsibilities to avoid duplication of effort. From a management standpoint, however, all major policy decisions were made by the three officers acting together as a "Management Committee." In the minutes of the corporation they are referred to as the "Management Committee." In the outlines furnished of their respective duties, each is referred to as a "vital part of the 'Management Team.'"

We agree with petitioners' contentions that the services of Ward, Tinsley, and Lafky were substantially of equal value. Not only were they so considered by the petitioners during the taxable years but they were so considered by Boyle when he was the controlling stockholder. Every employment contract entered into between Boyle Fuel and Ward, Tinsley, and Lafky, has provided that they were to receive the same basic salaries and the same percentages of profits. The same is true of the employment contracts entered into between Spokane Heating and Ward, Tinsley, and Lafky.

We do not agree with petitioners' contentions, however, that the same amounts should be allowed herein as deductions for the services of Tinsley and Lafky as were *allowed* by respondent for the services of Ward. The reasonableness of the compensation paid each individual officer is to be separately determined. While we agree in general with the overall amounts allowed by respondent as reasonable compensation for the services of all of petitioners' officers, we do not agree with the specific amounts allowed for the services of each individual. Had respondent allowed smaller amounts for the services of Ward and more equal amounts for the services of Tinsley and Lafky, we would have been inclined to approve such allowances. Under the

present posture of the cases, however, we are not authorized to reduce the amounts allowed by respondent for the services of Ward. Accordingly, in our findings, we have not disturbed the amounts allowed by respondent as reasonable compensation for the services of Ward. Our findings with respect to the services of Tinsley and Lafky are based upon our conclusion that the services of Ward, Tinsley, and Lafky were substantially of equal value.

We hold that petitioners are entitled to deductions in the amounts set forth in our findings as reasonable compensation for the services of Boyle, Ward, Tinsley, and Lafky.

*Decisions will be entered under Rule 50.*