DAHLEM FOUNDATION, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE

Docket No. 4535–68. Filed July 30, 1970.

*Robert L. Ackerson*, for the petitioner.
*W. Gerald Thornton*, for the respondent.

1568

OPINION

*Issue 1.   Accumulated Earnings Tax*

This case presents for our determination *inter alia* the narrow issue of whether during the period involved herein petitioner was a "mere holding or investment company" for purposes of the accumulated earnings tax provisions, which are embodied in sections 531 through 537 of the Code. Section 532(a) provides that the accumulated earnings tax imposed by section 531 shall be applicable (with certain exceptions not relevant hereto) to any corporation "formed or availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed."

To facilitate the making of the determination of whether this proscribed purpose is present in a given factual pattern, section 533 sup-

plies two rebuttable statutory presumptions, as follows: (1) The fact of an accumulation of corporate earnings and profits beyond the reasonable needs of the business is determinative of the existence of the forbidden purpose, unless the corporation proves otherwise by a preponderance of the evidence; and (2) the fact that a corporation is a "mere holding or investment company" constitutes prima facie evidence of the presence of the proscribed tax-avoidance purpose. We are not concerned here with the former presumption inasmuch as respondent has conceded that the petitioner had reasonable business needs for its accumulated earnings as of the end of each of the 3 fiscal years at issue. This concession is consistent with the Sixth Circuit's holding in a prior unrelated case involving the tax liability of this same petitioner for earlier years. See *Dahlem Foundation, Inc.* v. *United States*, 405 F. 2d 993 (C.A. 6, 1968).

Respondent urges that we respond affirmatively to the query concerning whether petitioner was a "mere holding or investment company" during the period relevant hereto. The practical significance of such a holding would be two-fold: (1) The previously mentioned presumption that petitioner was formed or availed of for the purpose of avoiding income tax with respect to its shareholders would be raised in accordance with the provisions of section 533(b); and (2) petitioner would not be entitled to an accumulated earnings credit against its accumulated taxable income for the years involved herein. This latter result would obtain by virtue of section 535(c)(3) wherein the accumulated earnings credit with respect to a "mere holding or investment company," unlike other corporations, is restricted to "the amount (if any) by which $100,000 exceeds the accumulated earnings and profits of the corporation at the close of the preceding taxable year." Since petitioner's accumulated earnings were in excess of $100,000 at the close of each of the years preceding the years at issue, petitioner would not be entitled to any accumulated earnings credit and the surtax provided under section 531 would be imposed upon the full amount of its accumulated taxable income for the period involved herein.

Petitioner contends that it is beyond the pale of the definition of a "mere holding or investment company" due to its engagement in a considerable amount of substantial business activity throughout the period relevant hereto. The question whether a corporation comes within the definition of a "mere holding or investment company" is one of a factual nature, the determination of which turns upon the facts and circumstances of each individual case. *Beim Co.* v. *Landy*, 113 F. 2d 897, 900 (C.A. 8, 1940). After a careful consideration of all the facts in the record before us and the legal principles applicable

thereto, we find ourselves in agreement with the position advanced by the petitioner.

The Internal Revenue Code nowhere defines "a mere holding or investment company" as that term is used in the accumulated earnings tax provisions of the statute. The "mere holding company" language has appeared in the predecessor provisions of section 533(b) since the Revenue Act of 1913. See sec. II(A)(2), Revenue Act of 1913. The scanty legislative history indicates that this section was designed to prevent the formation of companies created to hold passively and accumulate an individual's wealth for the purpose of avoiding Federal income tax. 50 Cong. Rec. 5318–5319 (1913). Indeed, many of the early cases find the existence of a "mere holding or investment company" in situations where individuals or family groups were using corporate shells as a "pocketbook" to which personal property, investments, salaries, and other earnings were siphoned for tax-avoidance purposes. See *Wilson Bros. & Co.* v. *Commissioner*, 124 F. 2d 606, 608–609 (C.A. 9, 1941), affirming a Memorandum Opinion of this Court; *Blaffer* v. *Commissioner*, 103 F. 2d 487, 489 (C.A. 5, 1939), affirming 37 B.T.A. 851 (1938); and *Reynard Corporation*, 37 B.T.A. 552, 561–563 (1938).

The words "investment company" were added to a predecessor of section 533(b) (sec. 220(b), Revenue Act of 1924) by the Revenue Act of 1924 in order to extend the prima facie presumption of the existence of the proscribed purpose to pure investment companies. Since petitioner is not in the business of trading in securities, real estate, or other property in order to derive a profit from market fluctuations, it would not appear to qualify as an "investment company," and therefore if it is to be governed by sections 533(b) and 535(c)(3) at all, it must fall within the "mere holding company" category. Cf. sec. 1.533–1(c), Income Tax Regs.

In ferreting out the true meaning of the term "mere holding or investment company," the courts have laid great stress on the word "mere." For instance, in the case of *Olin Corporation*, 42 B.T.A. 1203, 1214 (1940), affd. 128 F. 2d 185 (C.A. 7, 1942), we stated the following with respect to the issue of whether petitioner was a "mere holding or investment company" within the meaning of section 104(b) of the Revenue Act of 1932 (progenitor of sec. 533(b), I.R.C. 1954):

There is much evidence in the record bearing upon petitioner's business activities, both during the taxable years and prior years. We think that this evidence shows that petitioner was primarily a holding and investment company. * * * But while we think that the facts show that petitioner was primarily a holding and investment company, we would be unwilling to say that it was a *mere* holding or investment company, within the meaning of the applicable statute. [Citations omitted.]

Similarly, in the recent opinion of *Battelstein Investment Co.* v. *United States*, 302 F. Supp. 320, 329–330 (S.D. Tex. 1969), the court concluded that the taxpayer's activities in expanding and modernizing the real property it owned were sufficient to remove it from the "mere holding or investment company" category. The court in *Battelstein* explained its *ratio decidendi* for arriving at this conclusion in part as follows:

The adjective "mere" which is used in Section 533(b) in connection with holding and investment companies must not be overlooked. It was inserted in the statute to distinguish those corporations whose nature is such as to create the presumption of the proscribed purpose from those which are primarily holding or investment companies. A corporation is not affected by Section 533(b) even though it is primarily a holding or investment company. [Citations omitted.]

Generally speaking, the foregoing cases and the authorities relied upon therein seem to stand for the proposition that the presence of the word "mere" in the statutory language at issue manifests an intention to draw a distinction between holding or investment corporations which are strictly passive in nature and those which engage in some measure of business activity. Perhaps the most graphic illustration of the degree of business activity sufficient to extricate a corporate taxpayer from the "mere holding or investment company" classification is found in our opinion in *Nemours Corporation*, 38 T.C. 585 (1962), affirmed per curiam 325 F. 2d 559 (C.A. 3, 1963).

In that case, the petitioner had been a personal holding company throughout the 22-year period immediately preceding the taxable year involved therein. During such year, the petitioner purchased a working interest in 18 gas condensate wells. Petitioner's working interest in such wells was managed and operated during the year at issue by an agent, but it was contemplated that the petitioner would eventually gradually assume these responsibilities. Based upon these facts, we held that the scope of this business activity was of sufficient magnitude to disqualify petitioner from being a "mere holding or investment company."

In our view, the opinion in *Nemours Corporation, supra,* dictates a like result in the case at bar. If anything, the facts in the instant case are even stronger with respect to the extent of business activity engaged in by the petitioner, leaving the question free from doubt. The record herein reveals that during the period at issue petitioner, through the combined efforts of its two principal officer-employees (Joseph and Bernard), performed the following: (1) Located an undeveloped parcel of real estate suitable for the site of the Cliffboro Shopping Center; (2) negotiated and paid the purchase price of such undeveloped land; (3) secured leases from various triple-A rated businesses to occupy the buildings to be situated in the shopping cen-

ter; (4) arranged a $370,000 loan for the construction of the shopping center; (5) handled various management functions with respect to the center; and (6) maintained and repaired various portions of the center.

Furthermore, the facts herein show that petitioner owned and actively managed properties at two other locations, including another shopping center, an apartment house, a restaurant, and a ground lease to a service station. Under the provisions of a majority of the leases which petitioner entered into with its tenants, petitioner was entitled to rental payments based upon gross sales in addition to the customary fixed rental amount. This prompted petitioner's officers (particularly Bernard) to review carefully the tenants' reports of gross sales and then to conceive of and suggest to the tenants various means by which they might increase their sales volume. Additionally, petitioner was generally responsible for exterior repair and maintenance (i.e., building roofs and exteriors, sidewalks, parking lots, etc.) of its leased properties, and petitioner's officers periodically inspected such properties and arranged for the necessary repair thereof. Finally, each of petitioner's principal officers received and answered correspondence and telephone calls concerning petitioner's business affairs.

Of course, we are not unmindful of the fact that Joseph and Bernard in their testimony before us were not prone to underestimate either the amount of activity engaged in by the petitioner or the degree of effort each personally expended on its behalf. Moreover, the record shows that Joseph and Bernard were officer-shareholders in and devoted their time and efforts to various other corporations, including the largest construction company in the State of Kentucky (Dahlem Construction Co.). Furthermore, all of the Dahlem companies operated from the same office building, and petitioner did not have a separate telephone listing or any specific area designated as the place to conduct its business. Nevertheless, we are unaware of any legal requirement that petitioner must conduct a large-scale day-to-day operation in order to fall without the "mere holding or investment company" category. Certainly, the degree of business activity which the evidence of record establishes petitioner to have engaged in during the period at issue will suffice to effect this result.

Respondent strains mightily to fit the instant case within the holding company definition supplied by section 1.533–1(c) of the Treasury regulations. These regulations provide in pertinent part:

A corporation having practically no activities except holding property and collecting the income therefrom or investing therein shall be considered a holding company within the meaning of section 533(b).

Manifestly, petitioner did considerably more than merely hold rental property and collect the rents therefrom, i.e., it actively developed,

managed, and maintained its properties. Hence, even under respondent's own regulations petitioner would not qualify as a holding company for section 533(b) purposes. Since each case involving the instant issue rests upon its own individual facts, it would not serve any useful purpose to discuss the various cases relied upon by the respondent. Suffice it to say that we have found each of these cases to be readily distinguishable on its respective facts.

Based on the foregoing, we hold that petitioner was not a "mere holding or investment company" as that term is used in sections 533 (b) and 535(c)(3). As a result of this holding and respondent's concession that petitioner had reasonable business needs for the accumulation of earnings in an amount at least equal to the earnings it actually accumulated during the years at issue, petitioner is entitled to an accumulated earnings credit under section 535(c) in an amount equivalent to its accumulated taxable income during such years. Therefore, we do not find it necessary to reach the issue of whether petitioner was formed or availed of for the forbidden tax-avoidance purpose.

## *Issue 2. Unreasonable Compensation*

Section 162(a)(1) provides that in computing its taxable income a corporation shall be allowed a deduction for all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on its trade or business, including "a reasonable allowance for salaries or other compensation for personal services actually rendered." The total compensation paid by the petitioner to any of its officer-employees in return for their personal services through the fiscal years at issue was as follows:

|  | *Mar. 31, 1963* | *Mar. 31, 1964* | *Mar. 31, 1965* |
|---|---|---|---|
| Joseph C. Dahlem, president | $5,000 | $5,000 | $5,000 |
| Bernard A. Dahlem, vice president–secretary | 3,000 | 3,000 | 3,000 |
| Mary D. Freville, assistant secretary | 500 | 200 | 200 |
| Total compensation | 8,500 | 8,200 | 8,200 |

In accordance with the above-quoted Code provision, petitioner claimed a business expense deduction for officers' compensation in the amounts set forth above on its Federal corporation income tax returns filed for its fiscal years 1963, 1964, and 1965. Respondent disallowed a portion of such deduction for each of the years involved on the grounds that the claimed amounts were in excess of a reasonable allowance for the compensation of petitioner's officers. The total amounts claimed, allowed, and disallowed as officers' compensation are set forth in the chart below:

|  | Mar. 31, 1963 | Mar. 31, 1964 | Mar. 31, 1965 |
|---|---|---|---|
| Claimed | $8, 500. 00 | $8, 200. 00 | $8, 200. 00 |
| Allowed | 3, 316. 14 | 3, 802. 80 | 6, 525. 82 |
| Amount disallowed | 5, 183. 86 | 4, 397. 20 | 1, 674. 18 |

The burden of proving reasonableness is upon petitioner, and the question is one of fact to be determined from all the facts and circumstances of each individual case. *Botany Worsted Mills* v. *United States*, 278 U.S. 282 (1929), and *Boyle Fuel Co.*, 53 T.C. 162, 169 (1969). It is patent from an examination of the record herein that petitioner has sustained its burden of proof with respect to this issue.

The position advanced by the respondent, to the effect that the compensation paid Joseph, Bernard, and Mary was excessive and unreasonable in relation to the services they performed in their respective capacities as officer-employees of petitioner, is deserving of only short shrift. We are confident that respondent compensates his own employees on a more generous basis than he is apparently willing to permit petitioner to compensate its officers. We do not feel it necessary to reiterate here the extensive services Joseph and Bernard performed on behalf of the petitioner. These services are outlined in detail in our Findings of Fact and partially repeated in our discussion of the first issue. We shall therefore merely highlight a few of the considerations that have led to our strong convictions regarding this issue.

Joseph is a recognized pioneer in the State of Kentucky in the field of planning, constructing, and managing shopping centers. A reasonable consultant's fee for the knowledge and expertise he brought to the handling of petitioner's business affairs would exceed the meager salary he received from petitioner. Moreover, it is clear from the record that Joseph's personal contacts with influential businessmen in the Louisville community were instrumental in securing triple-A tenants for petitioner's properties. The standard brokerage fee of 4 percent to 6 percent of the gross rentals that petitioner derived from the leases that Joseph secured would also aggregate a substantial amount.

Bernard is a registered engineer in three States and has been designated as a Certified Shopping Center Manager by the International Council of Shopping Centers. Certainly, the efforts he directed toward the review of the gross sales of petitioner's tenants, the maintenance of its properties, and the handling of its correspondence should easily command the $3,000 annual salary he was paid. Likewise, the abundance of correspondence and corporate minutes which were typed by Mary and which were introduced into evidence herein

## 1580

attest to the fact that the secretarial services she rendered for petitioner were more than ample to justify the $500 salary she received during the fiscal year ended March 31, 1963, and the $200 salary she received in each of the two subsequent fiscal years.

The parties devote much discussion on brief to the traditional factors employed by the courts in determining the reasonableness of compensation. These factors are well summarized in the case of *Mayson Manufacturing Co.*, 178 F. 2d 115, 119 (C.A. 6, 1949). Careful consideration of the application of these traditional tests to the facts and circumstances of the case at bar convinces us that the compensation petitioner paid Joseph, Bernard, and Mary was eminently reasonable in view of the efforts each of them expended in petitioner's behalf.

We therefore hold that petitioner is entitled to the full amount of the ordinary and necessary business expense deduction that it claimed on its returns for the compensation it paid to its officer-employees during each of the 3 fiscal years at issue. Due to concessions by the parties with respect to other items reflected in the statutory notice,

*Decision will be entered under Rule 50.*