KHALIL T. AND SOPHIE GHOSN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; GYRO KING, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ghosn v. Commissioner
Docket Nos. 190-94, 191-94
United States Tax Court
T.C. Memo 1995-192; 1995 Tax Ct. Memo LEXIS 193; 69 T.C.M. (CCH) 2508; April 27, 1995, Filed *193 Decisions will be entered for respondent in docket No. 190-94 and for petitioner in docket No. 191-94. Khalil T. Ghosn, pro se, and an officer of Gyro King, Inc. For respondent: Ronald Aiani. NAMEROFF
NAMEROFF
MEMORANDUM OPINION NAMEROFF, Special Trial Judge: These consolidated cases were heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
In docket No. 190-94, respondent determined deficiencies in the individual petitioners' Federal income taxes for 1988 and 1989 in the respective amounts of $ 1,904 and $ 2,452. Respondent also determined an addition to tax under section 6653(a) in the amount of $ 95 for 1988, and a penalty under section 6662(a) for 1989 in the amount of $ 490. In docket No. 191-94, respondent determined deficiencies in Federal income tax for Gyro King, Inc. (Gyro *194 King) for taxable years ending August 31, 1988, and August 31, 1989, in the amounts of $ 4,052 and $ 570, respectively. Further, respondent determined additions to tax under section 6653(a)(1)(A) in the amount of $ 213 and section 6653(a)(1)(B) in the amount of 50 percent of the interest payable on the portion of the underpayment attributable to negligence for taxable year ending August 31, 1988; respondent also determined an addition to tax under section 6653(a) for taxable year ending August 31, 1989, in the amount of $ 114. In docket No. 190-94, respondent determined that petitioners therein had underreported interest income of $ 628, which is not in dispute, and had received unreported income in the form of constructive dividends from Gyro King in the amounts of $ 11,915 and $ 16,370, respectively for the taxable years 1988 and 1989. These constructive dividends were the result of payments made by Gyro King for petitioners' personal insurance and utilities expenses. In docket No. 191-94, respondent disallowed deductions claimed by Gyro King for insurance in the amount of $ 8,282 and utilities in the amount of $ 3,633 for the taxable year ending August 31, 1988, and for utilities *195 in the amount of $ 3,800 for the taxable year ending August 31, 1989. The issues for decision are: (1) Whether the individual petitioners received unreported constructive dividend income as set forth above; (2) whether Gyro King is entitled to deductions for insurance and utilities as indicated above; and (3) whether petitioners in each docket number are liable for the additions to tax as determined by respondent. For reasons set forth below, we sustain respondent's determinations in docket No. 190-94 and hold for petitioner in docket No. 191-94. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time of the filing of the petition herein, petitioners in docket No. 190-94 resided in Costa Mesa, California, and the principal place of business of petitioner in docket No. 191-94 was in Placentia, California. At all times relative to this case, Gyro King was a corporation engaged in owning and operating a restaurant specializing in Middle Eastern foods. Khalil T. Ghosn (petitioner when used in the singular) was the sole shareholder of Gyro King. In addition, petitioner was the *196 cook, janitor, driver, and chief executive officer of Gyro King. Gyro King had no employees other than petitioner, Mrs. Ghosn and, occasionally, their teenage son who was still enrolled in school. According to petitioner, Gyro King was open 7 days a week, and petitioner and his wife were busy on behalf of the business from morning until night. Petitioner testified that he had a room in his home which he used in the mornings to prepare business records, make telephone orders for restaurant supplies, and perform other business tasks on behalf of Gyro King. Moreover, some of the supplies of Gyro King were stored in petitioner's home garage. In the taxable year ending August 31, 1988 (fiscal year 1987), Gyro King had sales of $ 299,732, gross profit of $ 213,046 and paid "management expenses" of $ 27,667. No salaries were claimed as expenses on fiscal 1987 return. For the subsequent year, fiscal 1988, Gyro King had sales of $ 257,158, gross profit of $ 190,797 and "management expenses" of $ 51,427. Again, no expenses were claimed for salary. It is undisputed that Gyro King paid petitioner's personal life, home, and vehicle insurance premiums, as well as some of petitioner's residential *197 utilities expenses. The parties have not attempted to reconcile amounts disallowed as expenses on Gyro King's fiscal 1987 and 1988 returns with the amounts determined as constructive dividends on petitioners' 1989 and 1990 returns. Little attention was paid to the amounts in controversy during the trial, and we conclude that there is no dispute as to the amounts in controversy. [2]
It is well established that determinations by respondent in the notices of deficiency are presumed to be correct, and petitioners bear the burden of proving respondent's determinations to be erroneous. Rule 142; Welch v. Helvering, 290 U.S. 111 (1933). *198 With regard to petitioners' individual returns for 1989 and 1990, we conclude that petitioner has not demonstrated that respondent's determinations are erroneous. Indeed, petitioner has acknowledged that the corporation paid him various sums for his efforts in running the business, including the use of his house and garage for which he did not charge rent and the use of his car to pick up supplies. Petitioner further acknowledged that he did not keep adequate records so as to be able to demonstrate that he was entitled to any "employee business expense" deductions in connection with use of the home and cars. [3]
Petitioners' returns were prepared by a professional return preparer who, during the examination and administrative phases of this case, represented petitioner before the Internal Revenue Service. However, it has not been shown that the deficiencies determined for the *199 individual petitioners were due to preparer error, or that petitioner relied upon the preparer to his detriment. It has not been shown that petitioner provided all the necessary information to the preparer so that a proper income tax return could be prepared. Accordingly, we hold that the petitioners in docket No. 190-94 are liable for the additions to tax for negligence, as determined by respondent. Turning now to the case of Gyro King, we reiterate that petitioner does not dispute that Gyro King did, in fact, pay the premiums and utility expenses that were disallowed by respondent. However, petitioner contends that these sums are merely additional forms of compensation which were paid to compensate petitioner for his efforts in running the business. In view of the small amounts of "management expense" paid in connection with the services of petitioner, Mrs. Ghosn and their son, we conclude that the corporation made the payments of insurance premiums and utility expenses with the intent to compensate for services rendered. These payments accordingly were additional compensation for which the corporation is entitled to a deduction. The corporation's earnings were due solely *200 to the efforts of its employees, and the amounts herein involved are not unreasonable. See Dahlem Found., Inc. v. Commissioner, 54 T.C. 1566, 1578-1580, (1970); Langer v. Commissioner, T.C. Memo. 1990-268, affd. 980 F.2d 1198 (8th Cir. 1992). Accordingly, Gyro King may deduct the amounts at issue herein as compensation. Therefore, there is no deficiency due from Gyro King. As a result, the negligence issue is moot. To reflect the above, Decisions will be entered for respondent in docket No. 190-94 and for petitioner in docket No. 191-94. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties did stipulate copies of various insurance policies (which showed the premiums due) and utility bills with regard to restaurant premises. None of these documents in any way tie in with the amounts claimed as deductions on Gyro King's returns, disallowed by respondent as to Gyro King, or determined by respondent to be income to petitioners.↩
3. Petitioners would be in receipt of ordinary income whether the payments were classified as constructive dividends or extra compensation.↩