1152

ASIATIC PETROLEUM COMPANY (DELAWARE) LIMITED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 72452. Promulgated January 31, 1935.

*M. T. Moore, Esq.*, and *Joseph C. White, Esq.*, for the petitioner. *Chester A. Gwinn, Esq.*, and *Hugh R. Dowling, Esq.*, for the respondent.

**1154**

OPINION.

ARUNDELL: In addition to the facts stipulated, the parties have stipulated that, if the respondent erred in applying section 45 of the Revenue Act of 1928, there is no deficiency determinable against the petitioner for 1929; if he did not err in so doing, the deficiency for that year is $303,083. Section 45 is set out in the margin.[1]

Petitioner assails the determination of the respondent from two angles. First, that section 45 does not apply to the facts in this case, and, second, that if it does authorize the assessment proposed by the respondent it is unconstitutional.

Section 45 has no exact counterpart in prior revenue acts, but the three preceding acts contained provisions somewhat similar, and the provisions of section 45 are drawn from the earlier statutes, with modifications needed to meet new conditions brought about by changes in the provisions relating to affiliation and consolidated returns. The first of these several provisions was section 240 (d) of the Revenue Act

---

[1] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses.

of 1921, in which it was provided that the Commissioner *may* consolidate the accounts of "related trades or businesses, in any proper case, for the purpose of making an accurate distribution or apportionment of gains, profits, income, deductions, or capital  *  *  *  ." In explanation of this provision, introduced as section 249, the report of the House Ways and Means Committee stated (Report 350, 67th Congress, 1st Session, p. 14):

Subsidiary corporations, particularly foreign subsidiaries, are sometimes employed to "milk" the parent corporation, or otherwise improperly manipulate the financial accounts of the parent company. To prevent this abuse, section 249 (240) would give the Commissioner of Internal Revenue power to consolidate the accounts of two or more related trades or businesses solely for the purpose of making an accurate distribution of gains, profits, income, deductions, or capital, and not for the purpose of computing the tax on the basis of the consolidated returns.

In the report of the Senate Committee on Finance (Report 275, 67th Congress, 1st Session, p. 20) it was stated in reference to this section:

This is necessary to prevent the arbitrary shifting of profits among the related businesses, particularly in the case of subsidiary corporations organized. as foreign trade corporations.

In the Revenue Act of 1924 the provision relating to consolidation of accounts was originally proposed as it appeared in the 1921 Act. It was changed by the Senate Committee on Finance to provide that "the Commissioner may and at the request of the taxpayer shall" consolidate the accounts in the same situations specified in the 1921 Act, and, as so changed, was enacted and became section 240 (d) of the Revenue Act of 1924.

The provisions of section 240 (d) of the Revenue Act of 1924 were continued unchanged in section 240 (f) of the Revenue Act of 1926.

The House Ways and Means Committee, in drafting the bill which became the Revenue Act of 1928, omitted any provision for filing consolidated returns after the year 1928, and inserted section 45 and gave the following explanation (Report 2, 70th Congress, 1st Session, p. 16):

Section 45 is based upon section 240 (f) of the 1926 Act, broadened considerably in order to afford adequate protection to the Government made necessary by the elimination of the consolidated return provisions of the 1926 Act. The section of the new bill provides that the Commissioner may, in the case of two or more trades or businesses owned or controlled by the same interests, apportion, allocate, or distribute the income or deductions between or among them, as may be necessary in order to prevent evasion (by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purpose of "milking"), and in order clearly to reflect their true tax liability.

The Senate Finance Committee restored the right to file consolidated returns in the case of so-called class A affiliations, and retained section 45 with the explanation (Report 960, 70th Congress, 1st Session, p. 24):

Section 45 is based upon section 240(f) of the 1926 act, broadened considerably in order to afford adequate protection to the Government. The section of the new bill provides that the Commissioner may, in the case of two or more trades or businesses owned or controlled by the same interests, apportion, allocate, or distribute the income or deductions between or among them, in such manner as may be necessary in order to prevent evasion (by the shifting of profits, the making of fictitious sales, and other methods frequently adopted for the purpose of "milking"), and in order to arrive at their true tax liability.

Section 45 as enacted into law is in the form originally proposed by the House Ways and Means Committee, and explained by the Committees of both House and Senate as above quoted.

The substance of the transaction before us was this: A domestic corporation owned property salable at a profit. Instead of taking the profit it sold the property at cost to a foreign corporation, the stock of which was owned by the same interests that owned its stock. The vendee immediately sold the property to a domestic corporation at a substantial profit. This profit the respondent has allocated to petitioner under section 45.

We think that such allocation was proper in order "clearly to reflect the income" of petitioner. Here we have a group of four corporations, the domestic member of the group owning property which increased in value while owned by it, and the property was salable and was sold at a profit. But for the fact that the domestic corporation was a member of a group related through stock ownership, the profit would have been directly realized by it. The profit belonged to it, and under any normal circumstances it would have realized it and ultimately the profit would go to the stockholders. As the deal was worked out, a more devious route was taken, but the same stockholders were still in position to obtain the benefit of the profit. The increment in the value of the property was converted into a realized profit within the group. Under these circumstances it was proper to allocate the profit to the domestic corporation which owned the property during the period that the increment occurred.

The situation here is not like that in *Hoeper* v. *Tax Commission*, 284 U. S. 206, upon which petitioner relies in arguing that section 45, if applied to this case, is unconstitutional. In the *Hoeper* case the Supreme Court held invalid a state statute which required the income of the wife to be added to that of her husband and the aggregate taxed as the income of the husband. The decision rested largely on the circumstance that the laws of the state which thus sought to combine the two incomes had abolished all ownership and control of the wife's

property by the husband. The court pointed out that under the state law " the wife's income is in the fullest degree her separate property ", and the husband "never has any title to it, or controls any part of it." Here we face no such statute. While corporations under the Federal taxing statute are separate taxpayers, the same statute and the Commissioner's regulations have for many years recognized the necessity of commingling the accounts of corporate members of a group for the purpose of correctly reflecting income. Under the Revenue Act of 1918 affiliated corporations were required to file consolidated returns. In the case of a corporate group related through stock ownership a separate accounting would often result in a distortion of income; in a situation like the *Hoeper* case distortion would result from a combined accounting and the combination of accounts could not be compelled. Congress has the power to tax to a donee income representing increment in the value of property while in the hands of the donor, *Taft* v. *Bowers*, 278 U. S. 470, *Cooper* v. *United States*, 280 U. S. 409, and the power to subject to death duties the value of property given away long before death if the gift was made in contemplation of death, *Milliken* v. *United States*, 283 U. S. 15. The section of the statute here involved, like those in the cases just cited, seems to us to be " appropriate for enforcing a general scheme of lawful taxation." *Taft* v. *Bowers*, *supra*. The present case aptly demonstrates the ease with which tax would be escaped on increment in value occurring while property having a situs in this country is owned by a domestic taxpayer, in the absence of some such provision as section 45.

The application of section 45 to this case can be sustained on another ground. The statute authorizes the Commissioner to make an allocation of income or deductions "*if he determines* that such * * * allocation is necessary * * *." (Italics supplied.) The italicized words made the allocation a matter of discretion with the Commissioner. In matters intrusted to the discretion of administrative officers there is a heavy burden on him who claims error in its exercise—"a burden undoubtedly heavier than that of overthrowing a purely factual determination upon which the ultimate determination must depend." *Alfred E. Hamill*, 30 B. T. A. 955, 959. That case involved the use of inventories, which the statute provides shall be taken "Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income * * *." In an earlier case involving the same statutory provisions, *Finance & Guaranty Co.* v. *Commissioner*, 50 Fed. (2d) 1061, it was said:

Where a statute commits to an executive department of the government a duty requiring the exercise of administrative discretion, the decision of the executive department, as to such questions, is final and conclusive, unless it is clearly proven arbitrary or capricious, or fraudulent, or involving a mistake of law.

As the statute involved here makes the allocation of income discretionary with the Commissioner, the rule invoked in the above cases is applicable here. Cf. *Crossett Western Co.* v. *Commissioner*, 73 Fed. (2d) 307; *Remco Steamship Co.*, 30 B. T. A. 579. In the latter case we said that section 45 was not designed as a relief provision and the rule requiring liberal construction of relief provisions does not apply. The respondent having exercised the discretionary power vested in him and determined that allocation is necessary in this case, petitioner has the burden of showing that such determination was purely arbitrary and not made under any of the situations prescribed by the statute as a proper foundation for allocation of income.

One of the statutory situations warranting allocation is " in order to prevent evasion." The Commissioner does not charge evasion, but contends that the scheme was one for avoidance of taxes. We think it unnecessary to decide whether the taxpayer has overstepped the rather vague line that by judicial interpretation separates these terms, for attempted evasion is not the only situation described as proper for invoking section 45. Another is " in order * * * clearly to reflect the income of any of such trades or businesses." There was in this case a realized profit, constituting income, on the sale of the Norco stock. The proximate sale producing that profit was not the sale by petitioner, but by Bataafsche. The question at this point is whether petitioner has demonstrated that the Commissioner acted arbitrarily in allocating that income so as to reflect it in petitioner's income. Having regard for the relation of the several corporations involved, the petitioner has not convinced us that the respondent's action was arbitrary. The petitioner, it should be remembered, was a wholly owned subsidiary of the two corporations which owned all the stock of Bataafsche. The income which has been allocated within the group so as to tax it to petitioner was the realization of an increment in value which occurred while the property was owned by the petitioner. These facts, in our opinion, support the propriety of the respondent's action and show the necessity of an allocation rather than demonstrate any abuse of discretion.

It is argued by petitioner that the profit realized by Bataafsche was not " gross income " because the sale of Norco stock took place outside of the United States, and in the case of a foreign corporation section 231 defines gross income as including only gross income from sources within the United States. Bearing in mind the purposes for which section 45 was enacted, we think that the phrase " gross income " is not susceptible of so narrow a construction. " The intention of the lawmaker controls in the construction of taxing acts as it does in the construction of other statutes, and that intention

is to be ascertained, not by taking the word or clause in question from its setting and viewing it apart, but by considering it in connecton with the context, the general purposes of the statute in which it is found, the occasion and circumstances of its use, and other appropriate tests for the ascertainment of the legislative will." *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84. We have set out above the explanation of the responsible Congressional Committees for the enactment of section 45. One of the reasons given as prompting the enactment is the practice of " shifting of profits, the making of fictitious sales." We have that situation here. There was an arbitrary shifting to the foreign corporation of a profit which had accrued to a domestic taxpayer. And the sale from petitioner to Bataafsche, even if not open to the charge of " fictitious ", clearly was not an arm's length transaction. If, as we view it, one of the purposes of section 45 is to bring within the reach of the taxing authorities income earned by a domestic taxpayer but arbitrarily shifted beyond the borders of the United States, it would be a strange rule of construction which would permit the defeat of that purpose by restricting the meaning of a particular phrase to that which it has in some other part of the statute. Certainly the profit realized here was gross income within the popular concept of that term; it is such in so far as domestic taxpayers are concerned, and it is not to be presumed that Congress intended to treat foreign corporations more favorably. " The natural conclusion is that if any discrimination had been intended it would have been made in favor of, and not against the domestic corporation, which contributes in a much more substantial degree to the support of the people and the government of the United States." *Helvering* v. *Stockholms Enskilda Bank*, *supra*. While the Commissioner is not here asserting the tax against the foreign corporations, they will be vitally affected, and the quoted observation of the Supreme Court is apropos of the subject under consideration.

It is also contended that petitioner is not engaged in a trade or business. This argument is based on the stipulation that petitioner " is and always has been a holding company engaged in holding the stocks of various subsidiary companies." Petitioner cites *Zonne* v. *Minneapolis Syndicate*, 220 U. S. 187; *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28, and similar cases.

In those cases the facts were that the corporations were doing nothing more than holding title to property and collecting and distributing the rents. In the first cited case the Court says, " The corporation had practically gone out of business in connection with the property, and had disqualified itself by the terms of reorganization from any activity in respect to it." In the other case the only activity

of the corporation "was the bare receipt and distribution to its stockholders of rent from a specified parcel of land." It was further pointed out in the *Minneapolis Syndicate* case that the corporation "as originally organized and owning and renting an office building was doing business within the meaning of the statute." There is nothing in the present case to establish that the activities were confined to the narrow scope that existed in the cited cases. The stipulation that it was engaged in holding the stock of various subsidiary companies does not establish either that that was its sole activity or that its activities as a holding company did not amount to a trade or business. Its charter is not in evidence and we know nothing of its powers. In the absence of evidence to the contrary we must take it that the petitioner was engaged in a trade or business. The stipulation does affirmatively establish that Bataafsche was engaged in business—that of "producing and selling petroleum in various parts of the world."

We accordingly sustain the respondent.

Reviewed by the Board.

> *Decision will be entered redetermining a deficiency in income tax for the year 1929 in the amount of $303,083.*

---

GOODRICH, dissenting: Respondent has allocated to petitioner as its income a profit derived by a foreign corporation upon a sale consummated outside the United States. That is too great a stretch even for the apparently limitless discretionary powers granted by section 45.

His action results in taxing income realized by a foreign corporation from sources without this country, which may not lawfully be done. See sections 231, 119 (c), Revenue Act of 1928.

No part of the profit on the second sale was received by petitioner. Consequently, to allocate that profit to it does not, in fact, clearly reflect its income.

To hold this profit the income of petitioner is to say that one may not sell except at a profit, if profit be possible. That is not good law. *Taplin* v. *Commissioner*, 41 Fed. (2d) 454; *Commissioner* v. *Van Vorst*, 59 Fed. (2d) 677; *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777; *United States* v. *Isham*, 17 Wall. 496.

Moreover, I doubt whether section 45, at least so far as it serves as a basis for respondent's action in this case, is constitutional, within the Fifth and Fourteenth Amendments. See *Hoeper* v. *Tax Commission of Wisconsin*, 284 U. S. 206; *Heiner* v. *Donnan*, 285 U. S. 312.