CHARLES ROCCO AND ELIZABETH ROCCO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RALPH CARLETTA AND MAE CARLETTA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 620–69, 621–69. Filed March 20, 1972.

---

*Martin M. Lore,* for the petitioners.

*James A. McNabb, Jr.,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' Federal income taxes for 1966 as follows:

| Docket No. | Petitioners | Deficiencies |
|---|---|---|
| 620-69____ | Charles Rocco and Elizabeth Rocco_____ | $4, 606 |
| 621-69____ | Ralph Carletta and Mae Carletta_____ | 11, 809 |

The issue for decision is whether respondent, pursuant to section 1375(c),[1] properly reallocated to petitioners the dividends received by members of their families from two corporations which had each elected to be treated for Federal income tax purposes as a "small business corporation" pursuant to subchapter S of chapter 1 of the Internal Revenue Code of 1954.

### FINDINGS OF FACT

Charles Rocco (hereinafter referred to as Rocco) and Elizabeth Rocco, husband and wife, were legal residents of Saddle River, N.J., at the time they filed their petition. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Newark, N.J.

Ralph Carletta (hereinafter Carletta) and Mae Carletta, husband and wife, were legal residents of Haworth, N.J., at the time they filed their petition. They filed a joint Federal income tax return for 1966 with the district director of internal revenue, Newark, N.J.

Rocco and Carletta were engaged in the construction business in New Jersey for many years, and during 1947 through 1951, they built 11 garden apartment houses. Five of these apartment houses, containing a total of 427 apartments, were located in North Arlington, N.J., and the remaining six, containing a total of 392 apartments, were located in Hackensack, N.J. Each of the apartment houses was owned by a separate corporation; the five apartment houses in North Arlington were owned by Ridge Park, Inc., sections 1 through 5, respectively, and the six apartment houses in Hackensack were owned by Hackensack Gardens, Inc., sections 1 through 6, respectively. Rocco and Carletta each owned 50 percent of the stock in each of these corporations (sometimes herein referred to as the apartment house corporations).

As construction of the apartment houses was completed, Carletta assumed the responsibility for supervising the rental of the apartments and seeing that they were properly maintained. Initially, each

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

apartment house corporation independently provided the required management services; however, in 1959, Rocco and Carletta purchased the stock of Reliable Homes, Inc. (hereinafter Reliable), and thereafter until 1966, Reliable furnished the management services for all 11 apartment house corporations. The use of this management company permitted the consolidation of operations, including record-keeping, payroll preparation, reporting of information to various Government agencies, and purchasing of supplies. Reliable also managed certain other rental properties which were individually owned by Rocco, Carletta, and their families. All together, it managed approximately 1,000 apartment units and 12 store buildings.

Reliable had 25 shares of stock outstanding; 50 percent of its stock was owned by four members of the Rocco family and 50 percent by three members of the Carletta family. Immediately after its acquisition by Rocco and Carletta, Reliable elected to be treated for Federal income tax purposes as a "small business corporation" under the provisions of subchapter S of chapter 1 of the Internal Revenue Code of 1954.

In 1959, the ownership of the 11 apartment house corporations was divided between Rocco and Carletta. Rocco became the owner of all the stock in Ridge Park, Inc., sections 1 and 5, and in Hackensack Gardens, Inc., sections 4, 5, and 6; Carletta became the owner of all the stock in the remaining six corporations. Between 1959 and 1966, Rocco and Carletta gave portions of their stock to various members of their families, but one of them individually continued to own slightly more than 50 percent of the stock in each of the apartment house corporations.

In 1966, two new corporations (sometimes hereinafter the management corporations), Charles Rocco Enterprises, Inc. (hereinafter Rocco Enterprises), and Ralph Carletta Enterprises, Inc. (hereinafter Carletta Enterprises), were organized to perform the management services previously rendered by Reliable. Each corporation issued 25 shares of stock for which it received $100 per share; all the stock of Rocco Enterprises and of Carletta Enterprises was purchased by members of the families of Rocco and Carletta, respectively. Immediately upon their formation, each of these new management corporations elected to be treated for Federal income tax purposes as a "small business corporation" under the provisions of subchapter S of chapter 1 of the Internal Revenue Code of 1954.

Rocco Enterprises managed the rental properties of the apartment house corporations controlled by Rocco, and Carletta Enterprises managed the rental properties of the apartment house corporations

controlled by Carletta. In addition, Rocco Enterprises and Carletta Enterprises managed rental properties individually owned by their respective shareholders. For these services, each corporation received a fee of 6 percent of the gross rents it collected; this was the customary fee in the area for management services.

Rocco Enterprises and Carletta Enterprises shared an office and employed a staff which included a secretary and a bookkeeper. In addition, each corporation employed maintenance personnel; superintendents whose duties included renting apartments, collecting rents, and responding to tenants' complaints; and project supervisors whose duties included depositing collected rents in the bank, approving prospective tenants, procuring supplies, and attending to major maintenance projects. Rocco and Carletta were employed by Rocco Enterprises and Carletta Enterprises, respectively, to set basic company policies; supervise the work of subordinates; review bids for major repairs, replacements, and improvements; analyze financial reports; sign checks for all bills; and attend to any special problems.

While in New Jersey, Rocco and Carletta each spent about 5 hours per day, 2 days a week, in his office at the headquarters of Rocco Enterprises and Carletta Enterprises, attending to his assigned duties. However, Rocco spent about 3 weeks in Florida during 1966 and he did not devote any time to Rocco Enterprises business during that period. Carletta similarly spent about $2\frac{1}{2}$ months during the winter of 1966 in Florida, and he did not devote any time to Carletta Enterprises business during that period. Rocco and Carletta, who were 64 and 63 years old, respectively, during 1966, were paid $14,950 and $11,960, respectively, for the services they rendered to the management corporations during that year.

Prior to the formation of Rocco Enterprises and Carletta Enterprises, Rocco and Carletta performed for Reliable services similar to those described above. They each received the following amounts of income from Reliable:

| Year | Salary | Dividends | Total |
|------|--------|-----------|-------|
| 1963 | $12,000 | $15,853.48 | $27,853.48 |
| 1964 | 12,000 | 20,928.59 | 32,928.59 |
| 1965 | 12,000 | 22,825.58 | 34,825.58 |

During each of these 3 years, Rocco and Carletta each owned 26 percent of Reliable's stock.

After the creation of the new corporations in 1966, Rocco owned 4 percent of the Rocco Enterprises stock, and Carletta owned 4 percent of the Carletta Enterprises stock. The stockholders of Rocco

Enterprises reported the receipt of the following amounts of income from the company during 1966:

| Stockholder | Relationship to Rocco | Salary | Dividend | Total |
|---|---|---|---|---|
| Rocco | | $14,950 | $1,395.33 | $16,345.33 |
| Constance Cuttito | Daughter | 3,978 | 5,581.31 | 9,559.31 |
| Cheryl E. Cuttito | Granddaughter | | 2,790.66 | 2,790.66 |
| Leslie L. Cuttito | Granddaughter | | 2,790.66 | 2,790.66 |
| Thomas Rocco | Son | 8,452 | 2,790.66 | 11,242.66 |
| Charles J. Rocco II | Grandson | | 2,790.66 | 2,790.66 |
| Elizabeth J. Rocco | Granddaughter | | 2,790.66 | 2,790.66 |
| Maria C. Rocco | Granddaughter | | 2,790.66 | 2,790.66 |
| Charles S. Rocco | Son | 6,678 | 8,371.96 | 15,049.96 |
| Jeffrey H. Rocco | Grandson | | 2,790.66 | 2,790.66 |

The stockholders of Carletta Enterprises reported the receipt of the following amounts of income from the company during 1966:

| Stockholder | Relationship to Carletta | Salary | Dividend | Total |
|---|---|---|---|---|
| Carletta | | $11,960 | $1,679.89 | $13,639.89 |
| Ruth C. Benvent | Daughter | 1,950 | [1] 10,079.34 | 12,029.34 |
| John R. Benvent | Son-in-law | | 5,039.66 | 5,039.66 |
| Nancy Benvent | Granddaughter | | 5,039.66 | 5,039.66 |
| John G. Sussek III | Grandson | | 3,359.78 | 3,359.78 |
| Gregory M. Sussek | Grandson | | 3,359.78 | 3,359.78 |
| Randall M. Sussek | Grandson | | 3,359.78 | 3,359.78 |
| Donna M. Sussek | Granddaughter | | 3,359.78 | 3,359.78 |
| Denise M. Sussek | Granddaughter | | 3,359.78 | 3,359.78 |
| Mark R. Sussek | Grandson | | 3,359.78 | 3,359.78 |

[1] The parties stipulated that Ruth C. Benvent received dividends of $10,078.34 during 1966. However, the corporation's tax return indicates that she actually received dividends of $10,079.34, and this amount corresponds with the stipulated total income received of $12,029.34.

Respondent determined that the salaries received by Rocco and Carletta from Rocco Enterprises and Carletta Enterprises, respectively, did not reflect the full values of the services which they rendered to such corporations within the meaning of section 1375(c), and reallocated portions of the dividends received by the members of their families, increasing the taxable incomes of Rocco and Carletta by $18,481 and $21,146, respectively. These reallocations were based on determinations that the "reasonable value[s]" of the services performed by Rocco and Carletta during 1966 were $34,826 and $34,786, respectively.

OPINION

Respondent is empowered by section 1375(c) to reallocate the dividends received by family members who are shareholders of a small business corporation whenever he deems it necessary in order to accurately "reflect the value of services rendered to the corporation

by such shareholders." [2] The purpose of this section is to assure that each stockholder is taxed on the full value of the income he earns. No deflection of that income is to be permitted through artificial salary or dividend payments. S. Rept. No. 1983, 85th Cong., 2d Sess. (1958), 1958-3 C.B. 1143-1144.

The standard to be employed in evaluating the services rendered to a corporation by its shareholders is set forth in section 1.1375-3(a), Income Tax Regs., as follows:

> In determining the value of services rendered by a shareholder, consideration shall be given to all the facts and circumstances of the business, including the managerial responsibilities of the shareholder, and the amount that would ordinarily be paid in order to obtain comparable services from a person not having an interest in the corporation.

In substance, this regulation incorporates the traditional standards employed by the courts under section 162(a)(1) in determining a "reasonable allowance for salaries or other compensation for personal services actually rendered." *Walter J. Roob*, 50 T.C. 891, 898 (1968). These factors—including the nature of the services performed, the need for any special ability or skill in performing them, the responsibilities involved, and the amount of time required—have been well summarized in *Mayson Mfg. Co.* v. *Commissioner*, 178 F. 2d 115, 119 (C.A. 6, 1949); *Dahlem Foundation, Inc.*, 54 T.C. 1566, 1580 (1970).

In *Walter J. Roob, supra*, respondent argued, and this Court stated (p. 898), that—

> In determining the correctness of * * * [an] allocation [pursuant to section 1375(c)] and the resulting deficiency, we must recognize that respondent's determination carries with it a presumption of correctness and that in order for petitioners to prevail, they must prove by a preponderance of the evidence that the determination is incorrect.

In the instant case, respondent takes a somewhat different position. He argues that the powers conferred by section 1375(c) on the Secretary or his delegate are similar to the powers given by section 482 [3] and that,

---

[2] SEC. 1375. SPECIAL RULES APPLICABLE TO DISTRIBUTIONS OF ELECTING SMALL BUSINESS CORPORATIONS.

(c) TREATMENT OF FAMILY GROUPS.—Any dividend received by a shareholder from an electing small business corporation (including any amount treated as a dividend under section 1373(b)) may be apportioned or allocated by the Secretary or his delegate between or among shareholders of such corporation who are members of such shareholder's family (as defined in section 704(e)(3)), if he determines that such apportionment or allocation is necessary in order to reflect the value of services rendered to the corporation by such shareholders.

[3] SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

consequently, in order for petitioners to prevail, they must prove that respondent's determinations are unreasonable, arbitrary, or capricious. See *Grenada Industries, Inc.*, 17 T.C. 231, 253 (1951), affd. 202 F. 2d 873 (C.A. 5, 1953), certiorari denied 346 U.S. 819 (1953); *Asiatic Petroleum Co. (Delaware) Ltd.*, 31 B.T.A. 1152, 1154 (1935), affd. 79 F. 2d 234 (C.A. 2, 1935), certiorari denied 296 U.S. 645 (1935), for a discussion of the rule under section 482 and its predecessors.

In view of the facts in this case, we need not decide which standard of proof is prescribed by section 1375(c). Under neither the preponderance-of-the-evidence rule nor the arbitrary-and-capricious criterion can respondent's determinations be allowed to stand. The undisputed testimony is that Rocco and Carletta, aged 64 and 63, respectively, in 1966, spent an average of only 2 days per week, 5 hours per day, in the offices of the management corporations. Approximately one-half of their time in those offices was devoted to the work of the management corporations, and the other one-half was devoted to the handling of their individually owned properties. Their work for the management corporations was largely ministerial in character. It consisted of checking for needed repairs, reviewing bids for major repair work, purchasing required supplies and equipment, reviewing financial reports, verifying bills, and signing checks. In addition, they had responsibility for directing the work of the project supervisors, the project superintendents, the maintenance helpers, and the office help. While they made the basic policy decisions for the management corporations, the ownership of the buildings remained in the apartment house corporations, and the truly significant policy responsibilities attributable to ownership rested with the officers and directors of those corporations.

For their services to the management corporations during 1966, Rocco was paid $14,950, and Carletta was paid $11,960. They testified that they thought they could have hired, for an annual salary of $4,000 to $6,000, a competent individual not having an interest in the corporations to replace either of them. Their accountant, who had observed the operations of the corporations, agreed with this opinion. Indeed, both Rocco and Carletta were able to take extended vacations in Florida in 1966. During the 2½ months Carletta was away, his daughter, who had previously worked in the office, took over his duties and made all management decisions without consulting him. For the entire year, her salary amounted to only $1,950. No other replacement was hired for either Carletta or Rocco while they were on vacation.

To support his reallocations, respondent presented no testimony to demonstrate that the salaries paid Rocco and Carletta were inordinately low or to show the reasonableness of the $34,826 and $34,786

which he determined to be the values of their respective services. He points out that such amounts approximate the total amounts annually received by Rocco and Carletta from Reliable. This observation, however, unaccountably ignores that only $12,000 per annum of the amounts paid to each of them by Reliable represented compensation for their services; the remainder constituted dividends. While the total amounts received by Rocco and Carletta from Reliable during 1963 through 1965 exceeded the amounts which they received from the management corporations during 1966, this is readily explainable by their decreased percentages of stock ownership.

Furthermore, respondent presented no testimony to refute petitioners' evidence as to "the amount that would ordinarily be paid in order to obtain comparable services from a person not having an interest in the corporation." Sec. 1.1375–3(a), Income Tax Regs. Rather, respondent argues that the large annual returns to the shareholders of Rocco Enterprises and Carletta Enterprises on their minimal investments demonstrate that the salaries paid Rocco and Carletta were unreasonably low. This argument, however, is not based upon the standard prescribed by the above-quoted regulation.

In the light of all the evidence, we hold that the salaries received by Rocco and Carletta during 1966 fairly reflected the values of the services which they performed. Respondent erred in reallocating to them portions of the dividends paid to the other shareholders.

*Decisions will be entered for the petitioners.*