HENRY J. LANGER AND PATRICIA LANGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; I CARE, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Langer v. Commissioner
Docket Nos. 23310-87, 6687-88
United States Tax Court
T.C. Memo 1990-268; 1990 Tax Ct. Memo LEXIS 287; 59 T.C.M. (CCH) 740; T.C.M. (RIA) 90268; May 30, 1990, Filed *287 Decisions will be entered under Rule 155. Thomas E. Brever, for the petitioners. Albert B. Kerkhove, for the respondent. CLAPP, Judge. CLAPP
*1009 MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined the following deficiencies in and additions to petitioners' Federal income taxes: Henry J. and Patricia K. Langer -- Docket No. 23310-87
Additions to tax under section
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1983
$ 7,984
$ 399
*
$ 1,613
I Care, Inc. -- Docket No. 6687-88
Additions to tax under section
Year
Deficiency
6621(d)**
6651(a)
6653(a)(1)
6653(a)(2)
6659
6661
1984
$ 42,419
applicable
$ 2,121
$ 2,121
*
$ 6,332
$ 5,328 After mutual concessions, the issues relating to the corporate petitioner are (1) whether it overstated a rent deduction; (2) whether it is allowed deductions related to the purchase of a van; (3) whether it is allowed a deduction for fuel used in the van; (4) whether it is allowed deductions for travel and entertainment; (5) whether it is liable for an addition to tax for failure to file a timely return; (6) whether it is liable for an addition to tax for negligence; (7) whether it is liable for an addition to *288 tax for a substantial underpayment; and (8) whether it is liable for the increased rate of interest under section 6621(c). The issues relating to the individual petitioners are (1) whether they are allowed an investment tax credit and deductions for certain partnership expenses; (2) whether they are allowed deductions for certain travel expenses; (3) whether they are allowed a home office deduction for the use of half of their residence in a piano teaching business; (4) whether they are allowed a deduction for noncash charitable contributions; (5) and whether they are liable for an addition to tax for negligence. Petitioners bear the burden of proof on all issues. Rule 142(a). Unless otherwise noted, all section references are to the Internal Revenue Code for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We incorporate by reference the stipulation of facts and attached exhibits. All petitioners resided in or were located in Minnesota when they filed their petitions. Our findings of fact will be combined with our opinion. A. The corporation
I Care was formed as a partnership in 1982 by petitioner Patricia Langer (Mrs. Langer), *289 Donna Campbell (Campbell), and Anne Marie Pierce (Pierce). All three are sisters. I Care designs and distributes stationery, greeting cards, and related items. On January 1, 1984, the partnership incorporated as petitioner I Care, Inc. (the corporation), a calendar year accrual taxpayer whose shareholders were Mrs. Langer, Campbell, and Pierce. Campbell owned 51 percent of the corporation's stock, Mrs. Langer owned 39 percent, and Pierce owned 10 percent. In 1984, the corporation had gross receipts of over $ 430,000. Campbell is the corporation's president, artist, designer, and supervisor of production and shipping. Mrs. Langer is the corporation's vice president and marketing director. Neither Campbell nor Mrs. Langer received any payment designated as salary during 1982, 1983, or 1984. Petitioner Henry J. Langer (Mr. Langer) is an Internal Revenue Service (IRS) revenue agent. During the years in issue, he assisted with grand jury matters and the Special Enforcement Program. Mr. Langer has never been a partner, shareholder, or employee of I Care. However, he has been informally involved in the business and has maintained its books and records. He prepared the corporation's *290 1984 income tax return. 1. Fair rental values of residences
In 1984, the corporation used approximately 40 percent of the Campbell residence for corporate activities such as assembling and storing cards. In addition, the corporation used a portion of the Langers' residences (the Langers moved during the year) for corporate activities. In late 1983, Campbell told Mr. Langer that she thought that the business should start paying the Langers for the space used in their residence. She asked Mr. Langer what the business should pay, and he suggested a range from $ 2,000 to $ 4,000 per month. In 1984, the corporation paid $ 30,000 to both Mrs. Langer and Campbell, with Campbell reporting the payment as rent for the corporation's use of her residence and the Langers reporting the payment as rent for the corporation's use of their *1010 residence and computer. Respondent disallowed $ 47,325 of the corporation's $ 60,000 rent deduction, allowing only $ 4,203 for the Campbell residence, $ 806 for the old Langer residence, $ 1,330 for the new Langer residence, and $ 6,336 for the Langer computer. Respondent presented an expert report that arrived at similar rental values. We believe that $ 60,000 *291 was an excessive rental for the corporation's use of the computer and two residences, especially since the Campbell residence was sold in 1985 for only $ 77,000. We conclude, however, that any amount not deductible as rent is deductible as compensation to Campbell and Mrs. Langer for past and present services. The corporation's earnings were due to the efforts of its employees, so it is entirely appropriate for the corporation to make substantial payments to its employees. See Dahlem Foundation, Inc. v. Commissioner, 54 T.C. 1566, 1578-1580 (1970). Accordingly, the corporation may deduct the entire $ 60,000 payment. 2. Van purchase
In 1984, the corporation took various deductions relating to the purchase of a 1984 Plymouth van. These deductions consisted of a $ 2,373 depreciation deduction, a $ 5,000 deduction under section 179, and a $ 2,102 interest deduction. All documents relating to the van were in Campbell's name. These documents included the contract, the Minnesota certificate of title, the credit application, the credit life insurance, and the vehicle service contract. When the van was damaged in an accident, Campbell sent the financing bank a note asking it to endorse *292 and return the insurance check to her because the check was "for repairing my van." The only written evidence that the van was owned by the corporation was a corporate balance sheet prepared by Mr. Langer for the period ending September 30, 1984 which listed the van as a corporate asset. However, when Mr. Langer prepared the balance sheet he did not know that the van was titled in Campbell's name. There is no evidence that the corporation paid for the van or that Campbell ever held herself out as an agent of the corporation regarding the van. The Langers and Campbell testified that the van was purchased for the corporation, that it was used extensively in the corporate business, that any personal use was incidental, and that the titling in Campbell's name was a mere oversight. Mrs. Langer testified that she understood the van to be owned by the corporation, and that employees who drove the van referred to it as the company car. Campbell testified that she essentially thinks of herself and the corporation as the same thing, and seldom distinguishes between the two. Respondent asserts that the corporation is not entitled to any of the deductions relating to the van because the van *293 was not owned by the corporation. The corporation has not carried its burden of proof on this issue, and accordingly the corporation is not entitled to the deductions. 3. Van fuel
During 1984, the corporation also took a $ 785 deduction for fuel used in the van. The corporation presented no substantiation for this figure other than a schedule of miles driven. It also did not present any evidence that the fuel was paid for by the corporation rather than by Campbell. Accordingly, this deduction is disallowed. 4. Travel and trade shows
In 1984, Campbell and three other family members took a 1-week family vacation to Disney World. On its 1984 return, the corporation deducted $ 520 for expenses related to this trip. The deduction consisted of $ 245 for airfare, $ 175 for a hotel, and $ 100 for miscellaneous expenses. Section 274(d) provides that traveling expenses such as these may not be deducted unless the taxpayer substantiates them by adequate records or by sufficient evidence corroborating his own statement. Sec. 274(d). The only evidence regarding the Disney World expenses is a note from Campbell to Mr. Langer reading "Henry -- My portion of trip to Florida -- plane fare *294 245; hotel 175; expenses 100," and testimony that Campbell conducted business on parts of 2 days. This evidence does not satisfy the requirements of section 274. See sec. 1.274-5(b) and (c), Income Tax Regs. Accordingly, the corporation is not allowed the $ 520 deduction. In 1984, Campbell and other corporate employees attended a trade show in New York. At the show, the corporation introduced new cards for Christmas and attempted to acquire new accounts. While in New York, Campbell purchased tickets to various Broadway shows for herself, Mrs. Langer, and an employee. No tickets were given to customers or potential customers. The corporation deducted the $ 720 cost of these tickets. Receipts for all these expenditures were introduced into evidence. We first conclude that the $ 240 expense allocable to the employee is deductible under section 162 and is not subject to section 274(a) because it was a recreational expense for an employee within the meaning of section 274(e)(5). See American Business Service Corp. v. Commissioner, 93 T.C. 449 (1989). Section 274(e)(5) does not apply to either Campbell or Mrs. Langer, however, because each owns at least 10 percent of the corporation's *295 stock. Accordingly, the remaining $ 480 is deductible only if the requirements of section 274(a)(1)(A) are satisfied. One requirement *1011 of that section is that the entertainment must be associated with the active conduct of the corporation's trade or business. This requirement will be satisfied if the corporation establishes a clear business purpose in making the expenditure. Sec. 1.274-2(d)(2). We believe that Campbell accurately described the expenditures when she testified that the entertainment "was like our treat. This was a treat to us and those of us who worked in the booth to relax at night." The entertainment did not have a clear business purpose, and accordingly we disallow the $ 480 deduction. 5. Timely return
Respondent determined that petitioner is liable under section 6651(a) for an addition to tax for late filing of its 1984 corporate income tax return, which was due on March 15, 1985. The corporation's return is dated March 15, 1985, was mailed in an envelope postmarked on March 18, 1985, and was filed on March 20, 1985. Section 6651(a) provides for an addition to tax in case of a failure to file a return on the prescribed date "unless it is shown that such failure *296 is due to reasonable cause and not due to willful neglect * * *." Additions to tax under section 6651(a) are presumed correct and generally are upheld, unless the taxpayer presents evidence controverting their applicability. Foy v. Commissioner, 84 T.C. 50, 75 (1985). Mr. Langer testified that he placed the return in a curbside mailbox between 4:30 and 5 p.m. on Friday, March 15, 1985. Mail at this box was scheduled to be collected on weekdays at 4:25 p.m., 5 p.m., and 6:30 p.m. As evidence of the timely mailing, Mr. Langer testified that he recalled that he prepared and mailed the return on a day off from work, and that his appointment book indicates he did not work on March 15. Mrs. Langer testified that Mr. Langer mailed the return immediately after she signed it on March 15. Mrs. Langer noted that Mr. Langer mailed a registration form for a music exam for her piano students at the same time that he mailed the return. The registration form required a March 15 postmark, and Mrs. Langer had a special interest in seeing that it was mailed on time so her students could take the exam. The registration form, like the tax return, was not postmarked by the March 15 deadline, so Mrs. *297 Langer's students were unable to take the exam as they had planned. Respondent called as a witness a postal supervisor who was in charge of cancelling mail. He testified that the corporation's tax return would have been postmarked on March 15 if Mr. Langer had mailed it on the afternoon of that date. He also testified that the return would have been postmarked on March 18 if it had been mailed after 3 p.m. on Sunday, March 17, and that the return normally would be in transit for 2 days. We are confident that Mrs. Langer accurately remembers the circumstances under which the music exam registration was mailed because doubtless she was not pleased when she learned that her students could not take the exam. Since the tax return also had a March 15 deadline, we believe it was mailed at the same time. Accordingly, we conclude that the failure of the return to be filed on time was "due to reasonable cause and not due to willful neglect" and that the corporate petitioner is not liable for the addition to tax for late filing. Ferguson v. Commissioner, 14 T.C. 846, 850 (1950); Swope v. Commissioner, T.C. Memo. 1989-414. 6. Negligence
Negligence under section 6653(a) is the lack of due *298 care or failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). At trial it was apparent that Mrs. Langer and Campbell were unsophisticated and had little, if any, business experience. A reasonable person under such circumstances likely would entrust preparation of the corporate tax return to someone, such as Mr. Langer, who could be expected to correctly report the corporation's income. Accordingly, the corporation is not liable for the addition to tax for negligence. See Kennedy v. Commissioner, T.C. Memo. 1987-430; Golden Nugget, Inc. v. Commissioner, T.C. Memo. 1969-149. 7. Substantial understatement
Section 6661 provides for an addition to tax in the case of a substantial understatement of income tax. A substantial understatement exists if the understatement of income tax exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 10,000. Sec. 6661(b)(1). When making the Rule 155 computations, the parties will have to determine whether the corporation has a substantial understatement of income tax. For this purpose, the parties will take into *299 account not only our disallowance of deductions relating to the van, the Disney World trip, and the Broadway shows, but also the corporation's concessions. If the corporation does have a substantial understatement, it may escape liability under one of the exceptions of section 6661(b)(2)(B). However, the first exception does not apply because there neither is nor was substantial authority for the corporation's disallowed deductions. Sec. 6661(b)(2)(B)(i). Nor does the second exception apply because the corporation disclosed *1012 no relevant facts in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Accordingly, the corporation does not escape liability under the exceptions of section 6661(b)2)(B). 8. Section 6621(c)
Section 6621(c) imposes an increased rate of interest on an underpayment in excess of $ 1,000 which is attributable to tax-motivated transactions. Tax-motivated transactions include "any use of an accounting method specified in regulations prescribed by the Secretary as a use which may result in a substantial distortion of income for any period * * *." Sec. 6621(c)(3)(A)(iv). Such an accounting method includes any deduction disallowed for *300 any period under section 267(a). Sec. 301.6621-2T, A-3(6), Temp. Proced. & Admin. Regs., 49 Fed. Reg. 59394 (Dec. 28, 1984). The corporation concedes that section 267 disallows a $ 36,000 deduction for salaries to shareholders which were accrued in 1984 but not paid until 1985. Accordingly, section 6621(c) applies to the underpayment attributable to this item. Respondent also argues that the excess rental payments on the residences were a sham or fraudulent transaction under section 6621(c)(3)(A)(v). However, we have characterized those payments as compensation, and the rentals of the residences were neither shams nor fraudulent. B. The Langers
1. Partnership expenses and investment tax credit
On their 1983 return, the Langers deducted $ 6,004.29 as partnership expenses paid by a partner. In the notice of deficiency, respondent determined that only $ 3,296 of this amount is deductible, with $ 2,708 disallowed under sections 274 and 162. In their opening brief, the Langers assert that respondent incorrectly disallowed $ 2,284 of $ 2,710 of total claimed expenses incurred by Mr. Langer on partnership business. The $ 2,710 figure apparently refers to the same item as the $ 2,708 *301 figure of respondent, with the difference due to rounding errors. We cannot find the $ 2,284 figure in the notice of deficiency. In any event, the Langers' argument has no merit. Section 162 allows a deduction for ordinary and necessary expenses incurred in carrying on a trade or business. Mr. Langer was neither a partner nor an employee of the partnership during 1983, so section 162 does not permit the deduction of his expenses relating to the partnership. Accordingly, the $ 2,708 deduction is disallowed. Respondent asserts in his opening brief that the remaining $ 3,296 should be disallowed on the ground this amount was a partnership expense paid by a partner. Respondent had not previously asserted the disallowance of this amount, so we allow the $ 3,296 deduction. The Langers also took a $ 1,046.56 investment tax credit. Neither the return nor the notice of deficiency indicates the property to which this credit pertained. The briefs also are unclear, though it appears that the credit was taken with respect to a van used by Mrs. Langer in the partnership business. It goes without saying that petitioners have failed to carry their burden of proof on this issue. 2. Travel expense *302 On the Langers' 1983 return a $ 1,671.46 deduction was claimed for Mr. Langer's travel expenses. This deduction was calculated as follows: Air fares, etc.
$   385.50
Meal and lodging expenses
897.11
Auto expenses
Gasoline
$   586.69 Other
678.25 Total
$ 1,264.94 Business Usage
71%
Allocable expense
898.11 Depreciation
1,816.59 Total auto expenses
2,714.70
Total expenses
3,997.31
Less: Reimbursement
2,325.85
Net Deduction Claimed
$ 1,671.46
Mr. Langer testified that he used the 71-percent figure for business usage because he had used the same figure the year before, and "it appeared to me based on the actual expenses that I had probably driven the same amount of miles and used the same percentage." Mr. Langer later reconstructed his auto expenses and concluded that 69 percent of his mileage was business mileage. He based this calculation upon 5,348 miles as an IRS employee, 2,400 miles in the partnership business, and average annual mileage of 11,160. The mileage as an IRS employee is based upon travel vouchers he submitted to the IRS. There is no evidence regarding the source of the 2,400-mile figure. As noted above, Mr. Langer was neither a partner nor an employee of the partnership during 1983, so *303 section 162 does not permit the deduction of his expenses relating to the partnership. Accordingly, the business usage percentage is reduced from 71 percent to 48 percent, and the allocable automobile expense from $ 898.11 to $ 607.17. This reduces the deduction from $ 1,671.46 to $ 1,380.52. We cannot determine from the Langers' return the method Mr. Langer used to calculate his depreciation. However, if he used the 71-percent rather than the 48-percent figure, his allowable depreciation is only $ 1,228.18. This further reduces the deduction from $ 1,380.52 to $ 792.11. *1013 In addition, Mr. Langer must substantiate his traveling expenses. Sec. 274(d). An employee with deductible business expenses in excess of the amount reimbursed must submit a statement as part of his tax return showing all of the information required by section 1.274-5(c), Income Tax Regs.Sec. 1.274-5(e)(2)(iii), Income Tax Regs. Such a statement was not attached to the Langers' return and was not introduced into evidence. In fact, the only evidence regarding the claimed expenses are several travel vouchers, with accompanying receipts, that Mr. Langer presented to the IRS for reimbursement. Many receipts *304 are missing from these vouchers, including receipts for airfares in the amount of $ 385.50 and most of the gasoline expenses in the amount of $ 586.69. Mr. Langer's failure to satisfy the requirements of section 274 requires the disallowance of the deduction for the remaining $ 792.11 of his expenses. 3. Home office deduction
Mrs. Langer is a long-time piano teacher who teaches approximately 75 students in a portion of the Langers' residence. The Langers on their 1983 return took a $ 5,794.62 home office deduction that was based upon the assumption that approximately 49 percent of the Langers' residence was used for Mrs. Langer's piano teaching business. Mr. Langer arrived at this percentage by taking the total estimated hours of lessons (1,952-1/2) and dividing by 4,000. Respondent determined that only 13 percent of the Langer's residence was exclusively used in the piano teaching business and disallowed $ 4,288 of the deduction. Two rooms in the Langer residence had pianos. One room was the music studio and the other was the living room. Students would come in and warm up at one piano while Mrs. Langer was teaching another student in the other room. There also was a lounge *305 and a game room used by students, and several rooms (including the dining room) where Mrs. Langer would teach music theory. With the exception of the studio, the Langer family would use the other rooms when Mrs. Langer was not holding lessons. Under section 280A(c)(1), the Langers are entitled to a home office deduction only to the extent that the deduction is -- allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) [as] the principal place of business for any trade or business of the taxpayer, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business * * * . The only portion of the Langers' dwelling unit that was exclusively used by Mrs. Langer for piano lessons was the studio. Mrs. Langer used other rooms for lessons, but these rooms also were used by the Langers as living space. Respondent has determined that 13 percent of the Langer residence was exclusively used for piano lessons. The Langers have not presented any evidence to rebut this figure, so $ 4,288 of their deduction is disallowed. 4. Charitable contributions
The Langers *306 claimed noncash charitable contributions in the amount of $ 2,884. These contributions consisted mostly of old clothes. Mrs. Langer testified that she set the value of the donations according to what the merchandise would cost at a garage sale. She says she computed the value at about a tenth of their value when new. We note that this rather implausibly means that the items would have had an original value of over $ 28,000. Respondent would disallow the entire amount of the noncash charitable contributions. However, it is clear that the Langers made substantial donations, and we hold that the noncash charitable contributions had a value of $ 1,000. 5. Negligence
Finally, respondent determined the section 6653(a) addition to tax for negligence. Negligence under section 6653(a) is the lack of due care or failure to act as a reasonable person would act under the same circumstances where there is a legal duty to act. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Reasonable persons under the Langers' circumstances would either have made an effort to determine how to correctly report their income or would have hired someone to do so. We note, for example, that despite Mr. Langer's *307 background at the IRS he apparently did not bother to look at section 280A to determine the correct manner in which to calculate the home office deduction. His method of using hours spent in the home office has no basis in the law. We also note that Mr. Langer carelessly reported not only the Langers' deductions but also the corporation's. This suggests a pattern of carelessness. Thus, we are not faced with an isolated mistake by someone who made a reasonable attempt to understand the tax law. The Langers are liable for the addition to tax for negligence. Decisions will be entered under Rule 155. Footnotes
*. 50 percent of the interest due on the deficiency. ** Now section 6621(c)↩.