989 F.2d 484
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Peter A. JOHNSON and Claire P. Lyon, Petitioners, Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent, Appellee.
 No. 92-1938.
 United States Court of Appeals,
First Circuit.
 March 30, 1993
 
 Appeal from the United States Tax Court
 Peter A. Johnson and Claire P. Lyon on brief pro se.
 James A. Bruton, Acting Assistant Attorney General, Gary R. Allen, Jonathan S. Cohen and Regina S. Moriarty, Attorneys, Tax Division, on brief for appellee.
 U.S.T.C.
 AFFIRMED.
 Before Selya, Cyr and Boudin, Circuit Judges.
 Per Curiam.
 
 
 1
 The appellants, Peter A. Johnson and Claire P. Lyon, appeal a decision of the Tax Court that sustained a deficiency determined by the Internal Revenue Service on the appellants' joint income tax return for 1986. We affirm the Tax Court's decision.
 
 
 2
 * Mr. Johnson and Ms. Lyon are married and reside in New Hampshire. Mr. Johnson is a certified public accountant and for a number of years made his living as a consultant, primarily to law firms practicing in the field of energy regulation. In 1980, Mr. Johnson and Ms. Lyon incorporated Peter A. Johnson Associates, Inc. (PAJA), through which Mr. Johnson then carried on his consulting business. The corporation initially issued 100 shares of stock: 51 shares to Mr. Johnson and 49 shares to Ms. Lyon. The corporation later sold 8 more shares to an entity known as PAJA Pension Trust.
 
 
 3
 Mr. Johnson worked full-time for PAJA until 1985, when he accepted a salaried position at a hospital and his consulting work tapered off. Late in 1986, with PAJA relatively dormant, Mr. Johnson and Ms. Lyon decided to liquidate the company and distribute its assets to the shareholders.
 
 
 4
 At the time, the tax laws offered a choice to shareholders of liquidating corporations. Under 26 U.S.C. § 331, they could recognize all of the distributed assets on their income tax returns for the year in which the liquidation occurred, but pay taxes on the distribution at the capital gains rate, which was lower than the rate applied to "ordinary income" such as wages or dividends. Or, they could elect to treat the distribution under 26 U.S.C. § 333. Section 333 required the shareholders to allocate the distributed assets to two categories: (1) earnings and profits, and (2) all other assets. The shareholders had to declare the portion of the distribution that came from earnings and profits as ordinary income on their returns for the year in which the liquidation occurred, and pay taxes on it at the higher income tax rate. However, with respect to the portion of the distribution that took the form of the corporation's other assets, the shareholders could postpone recognizing any gain until they themselves sold the assets. Roughly speaking, then, Section 333 was a good deal only for shareholders of "a corporation holding appreciated property but having little or no earnings and profits...." B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders at p 11.62 (5th ed. 1987). If the corporation had significant earnings and profits, the shareholders were better off electing Section 331, recognizing a gain immediately on the entire distribution, but avoiding taxation of the earnings and profits at the higher income tax rates.
 
 
 5
 This case concerns the appellants' election to treat PAJA's distributed assets under Section 333 when they dissolved the corporation at the end of 1986. Mr. Johnson knew that Congress had repealed Section 333, effective January 1, 1987. See Pub.L. 99-514, Title VI, § 631(e)(3), Oct. 22, 1986, 100 Stat. 2273. He thus felt some urgency to liquidate PAJA by year's end. But, because personal business intervened, he did not sit down to the task until December 28, 1986.
 
 
 6
 Mr. Johnson and Ms. Lyon executed a number of documents on December 28. The first was a Form 1120-A, a "Short-Form Corporation Income Tax Return" for PAJA. This document showed that PAJA had assets of $132,249, of which "retained earnings" constituted $96,311. With such a significant amount of earnings-which the shareholders would have to declare as ordinary income under Section 333, but could treat as a capital gain under Section 331-liquidation under Section 333 was an unwise choice.
 
 
 7
 However, the appellants made it. For reasons never fully explained, Mr. Johnson figured PAJA's "earnings and profits" at zero when deciding whether to elect Section 331 or Section 333. Consequently, he and Ms. Lyon made a written shareholder Lyon made a written shareholder resolution to liquidate the corporation under Section 333. Each of them executed and filed with the IRS a Form 964, which bears the caption "Election of Shareholder under Section 333 Liquidation." Mr. Johnson also executed and filed, on behalf of the corporation, a Form 966, captioned "Corporate Dissolution or Liquidation," which identified Section 333 as the "Section of the Code under which the corporation is to be dissolved or liquidated." Mr. Johnson then wrote checks on PAJA's corporate account that distributed more than $137,000 in assets: $64,607 to himself, $63,632 to Ms. Lyon, and $9,622 to PAJA Pension Trust.
 
 
 8
 Four months later, when Mr. Johnson and Ms. Lyon filed their joint income tax return for 1986, they should have attached copies of the already-filed Forms 964, to alert the IRS to their election, see 26 C.F.R. §§ 1.333-3 and 1.333-6(a)(5), and treated their share of the distributed assets pursuant to Section 333-that is, by declaring the portion attributable to earnings and profits as ordinary income, but postponing recognition of any gain on the remainder.
 
 
 9
 The appellants did not do what their election required them to do. They did not attach Form 964; in fact, their income tax return contained no mention of the liquidation. It characterized all of the money they had received from the liquidation as proceeds of a "sale" of PAJA stock, and treated the entire distribution as a capital gain. This calculation would have been consistent with a liquidation under Section 331, or with a simple sale of stock unaccompanied by a liquidation, but it did not jibe with the Section 333 election the appellants had made the previous December.
 
 
 10
 The IRS accepted the appellants' return and took no further action until an audit in 1988 revealed the inconsistency between the election under Section 333 and the tax treatment given the distribution in the appellants' return. The IRS then rejected the appellants' efforts to revoke their Section 333 election, recalculated their tax liability to take the election into account, determined a deficiency of $24,790, and added penalties for negligence and for making a substantial understatement of taxes owed. The appellants sought review in the Tax Court, which held a one-day trial and sustained the IRS' actions. This appeal followed.
 
 II
 
 11
 Mr. Johnson and Ms. Lyon say that they are not liable for taxes calculated according to Section 333 for two reasons: first, because they never made a valid election; and second, because their election, even if formally valid, was based on a mistake and was therefore revocable.
 
 
 12
 * The appellants point to a number of errors they say they made while attempting to elect Section 333 and liquidate PAJA, and assert that strict compliance with all of Section 333's requirements is necessary in order to enjoy the benefits (or in this case, suffer the detriments) of the statute. This is not completely true. The level of compliance needed to make a valid tax election varies according to the nature of the requirement. The IRS " 'may insist upon full compliance with [its] regulations' when the regulatory requirements relate to the substance or essence of a statute, but [the Tax Court has] held that substantial compliance with regulatory requirements may suffice when such requirements are procedural and when the essential statutory purposes have been fulfilled." American Air Filter Co. v. Commissioner, 81 T.C. 709, 719 (1983) (citations omitted). See also Dunavant v. Commissioner, 63 T.C. 316 (1974) (same, construing Section 333).
 
 
 13
 Two of the regulations which the appellants say they violated-26 C.F.R. § 1.333-6, which required them to provide supplemental information about the liquidation, and 26 C.F.R. § 1.333-3, which required them to file a copy of Form 964 along with the original at the time of election-plainly do not go to the "essence" of the statute and are therefore "procedural" in the sense discussed above. Their breach will not defeat the election.
 
 
 14
 The other asserted defects require some discussion. First, the appellants say that the distribution was not "in complete cancellation or redemption of all the stock," 26 U.S.C. § 333(a)(1), because their Forms 964 inaccurately listed the number of shares each held. Mr. Johnson owned 51 shares at the time of the election, but listed only 47 in his Form 964; Ms. Lyon owned 49 shares, but listed only 46.
 
 
 15
 The premise does not support the conclusion. Nothing in the record causes us to believe that, in return for the company's assets, Mr. Johnson and Ms. Lyon (and PAJA Pension
 
 
 16
 Trust) actually gave up anything less than all of their shares in PAJA. And if that is so, then the distribution was "in complete cancellation or redemption of all the stock." Putting the wrong count on the forms did not affect the substance of the liquidation and therefore did not go to the essence of the statute.
 
 
 17
 Second, the appellants claim that they failed to make a timely election. Section 333(d) says: "The filing [of the written election form] must be within 30 days after the date of the adoption of the plan of liquidation." The cases indicate that this is an "essential" requirement. Shull v. Commissioner, 291 F.2d 680, 682-85 (4th Cir. 1961); Kelley v. Commissioner, 10 T.C.M. 143, 146 (1951). However, whether and when a plan of liquidation was adopted "is a question of fact ordinarily for the Tax Court," Shull, 291 F.2d at 684, and thus subject to review only for clear error.
 
 
 18
 We see no error in the Tax Court's finding that "the evidence clearly establishes December 28, 1986 [when the appellants executed a written shareholder resolution], as the date of the adoption of the plan of liquidation." It is true that Mr. Johnson testified that he and Ms. Lyon made a "decision" to liquidate PAJA sometime in November 1986. It is also true that Section 333 does not require "that a plan of liquidation must be in writing or in any particular form." Shull, 291 F.2d at 682.
 
 
 19
 But the statute does by its terms require the shareholders to "adopt" some "plan" of liquidation. In CC d that the shareholders had "adopted" a plan of liquidation before they made a formal resolution to that effect only because the shareholders had previously "acted deliberately ... and had gone so far in the actual execution of a plan of liquidation as to dissolve the corporation and terminate its existence for all purposes other than liquidation...." 291 F.2d at 684-85. Nothing of this sort happened here. The resolution executed on December 28 was the first manifestation of the appellants' intention to dissolve PAJA. In the absence of any evidence to corroborate Mr. Johnson's testimony, the Tax Court was entitled to find either that the "decision" in November never happened, or that it happened but was too indefinite an event to trigger the statutory filing requirement, and to conclude that the appellants did not "adopt" a plan of liquidation within the meaning of Section 333(d) until December 28-the same day that they made the election and filed Form 964.
 
 
 20
 Third, the appellants contend that PAJA failed to distribute all of its assets before the end of December 1986, thus violating Section 333(a)(2), which says that the benefits of election are available only if "the transfer of all the property under liquidation occurs within some one calendar month." Since the bulk of the distribution occurred in December 1986, when Mr. Johnson wrote corporate checks to himself, his wife and PAJA Pension Trust, the entire transaction had to be completed during that same "one calendar month." But, the appellants say, the distribution was not completed until March 1987, when Spriggs, Bode & Hollingsworth (one of PAJA's law firm clients) made a payment of $6,727 for "services rendered during November 1, 1986 through March 10, 1987."
 
 
 21
 We agree with the Tax Court that only some "indeterminate" portion of this payment-the part attributable to services rendered before PAJA was dissolved at the end of December 1986, and thus "earned" by the company-can be considered a "distribution" from PAJA to its shareholders. Any money paid for services rendered after the dissolution was money that Mr. Johnson earned on his own behalf.[1]
 
 
 22
 The late distribution of such a relatively small amount-something less than $6,727 and thus less than 5% of the PAJA's assets-does not affect the legitimacy of the election. A "liberality of approach" exists with respect to tax statutes that require corporate liquidations to be accomplished within specific time limits. Cherry-Burrell Corp. v. United States, 367 F.2d 669, 677 (8th Cir. 1966) (Blackmun, J.). Thus, when a tax statute on its face requires distribution of all corporate assets within a certain period in order to qualify for a tax benefit, the failure to dispose of a minor portion of the assets within the time allotted will not defeat the taxpayer's choice. See Mountain Water Co. v. Commissioner, 35 T.C. 418 (1960) (calling this the "de minimis rule"); Estate of Lewis B. Meyer v. Commissioner, 15 T.C. 850 (1950), rev'd on other grounds 200 F.2d 592 (5th Cir. 1952) (it "would be out of line with [the predecessor to Section 333] ... to hold that the failure, within the calendar month, physically to deliver less than 6 percent in book value of the distributed assets destroys the election ... ").
 
 
 23
 Finally, the appellants would have us rule that, because they reincorporated PAJA in 1991, they are not bound by the election they made more than four years earlier. They supply no useful authority for this proposition. The cases and revenue rulings they cite are inapposite; all involved the question whether a complete liquidation had occurred in the first place. See, e.g., Telephone Answering Service Co. v. Commissioner, 63 T.C. 423 (1974). In this case, the record shows that the appellants distributed PAJA's assets in the successful pursuit of a complete and permanent liquidation. Their belated revival of the corporate form, done after the IRS had determined a tax deficiency (and for no apparent reason other than to escape the consequences of that determination), "did not alter the character" of the previous distribution or affect the validity of their election. See Kennemer v. Commissioner, 96 F.2d 177, 178-89 (5th Cir. 1938).
 
 B
 
 24
 Even if their election was procedurally valid, the appellants say, the IRS should have allowed them to revoke it because it was based on the mistaken belief that PAJA had no "earnings and profits" to distribute to its shareholders. Although (with one exception not relevant here) the regulations implementing Section 333 say flatly that a written election to be governed by that provision "cannot be withdrawn or revoked," 26 C.F.R. § 1.333-2(b)(1), the appellants believe that a taxpayer may nevertheless obtain relief from an election made as the result of a mistake.
 
 
 25
 The courts have on occasion allowed taxpayers to revoke mistaken elections. See, e.g., Meyer's Estate v. Commissioner, 200 F.2d 592 (5th Cir. 1952); McIntosh v. Wilkinson, 36 F.2d 807 (E.D.Wis. 1929); DiAndrea, Inc. v. Commissioner, 47 T.C.M. 731 (1983) (revoking election under Section 333). However, in each of these cases the taxpayer made what the court characterized as a "mistake of fact." In deciding whether to allow taxpayers to revoke otherwise-valid elections, the courts have consistently distinguished between mistakes of fact, which may justify revocation, and mistakes of law, which will not. See Bankers & Farmers Life Ins. Co. v. United States, 643 F.2d 234, 238 (5th Cir. 1981); Shull v. Commissioner, 271 F.2d 447, 449 (4th Cir. 1959); Raymond v. United States, 269 F.2d 181, 183 (6th Cir. 1959); Grynberg v. Commissioner, 83 T.C. 255, 261-63 (1984); Cohen v. Commissioner, 63 T.C. 527 (1975). "Oversight, poor judgment, ignorance of the law, misunderstanding of the law, unawareness of the tax consequences of making an election, miscalculation, and unexpected subsequent events have all been held insufficient to mitigate the binding effect of elections made under a variety of provisions of the [Internal Revenue] Code." Estate of Stamos v. Commissioner, 55 T.C. 468, 474 (1970) and cases cited therein.
 
 
 26
 The appellants do not question the wisdom of this distinction, but argue that the Tax Court erroneously described their mistake as one of law. We agree with the Tax Court. The mistake in this case was Mr. Johnson's stated belief that PAJA had no "earnings and profits," and thus that the shareholders could defer recognition of the entire distribution under Section 333. Depending on its source, this could have been a mistake of fact or a mistake of law. "[M]istakes of fact occur in instances where either (1) the facts exist, but are unknown, or (2) the facts do not exist as they are believed to." Hambro Automotive Corp. v. United States, 603 F.2d 850, 855 (C.C.P.A. 1979). If Mr. Johnson had decided that PAJA had no "earnings and profits" because he believed it had no money in the bank, then his mistake would have been a mistake of fact. But, as the Tax Court found, it is "difficult to believe" that the appellants were unaware of PAJA's cash reserves when they made the election on December 28, 1986, for on the same day, Mr. Johnson, as president of PAJA, executed a corporate tax return indicating that the company had more than $96,000 in "retained earnings," and wrote checks to himself, Ms. Lyon and PAJA Pension Trust, drawn on the corporate bank account, totaling more than $137,000.
 
 
 27
 Since the appellants knew how much money the corporation had in the bank when they made the election, the only plausible explanation for their mistake is that they did not know that the money constituted "earnings and profits" subject to taxation as ordinary income under Section 333. See GPD, Inc. v. Commissioner, 508 F.2d 1076, 1082 (6th Cir. 1974) (corporation's "earnings and profits" may not bear an "exact relation" to earnings as determined by "normal corporate accounting methods"); Bennett v. United States, 427 F.2d 1202, 1208 (Ct.Cl. 1970) (" 'earnings and profits' ... is a tax, not an economic concept"). Thus, they made a mistake of law, which occurs "where the facts are known, but their legal consequences are not known or are believed to be different than they really are," Hambro Automotive Corp. v. United States, 603 F.2d at 855 (emphasis omitted), and may not revoke their election.
 
 III
 
 28
 The IRS made two "additions" to the appellants' tax liability. First, it added $1,240 under 26 U.S.C. § 6653(a)(1), which says: "If any part of the underpayment ... of tax required to be shown on a return is due to negligence (or disregard of rules or regulations), there shall be added to the tax an amount equal to 5 percent of the underpayment." "Negligence in this context is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. The Commissioner's imposition of a negligence addition is presumptively correct, leaving the [appellants] with the burden of proving that their underpayment was not due to negligent or intentional rules violations." McMurray v. Commissioner, Nos. 92-1513 and 92-1628, slip op. at 13 (1st Cir. February 9, 1993). We review the Tax Court's findings on negligence issues only for clear error. Leuhsler v. Commissioner, 963 F.2d 907, 910 (6th Cir. 1992).
 
 
 29
 There was no error. The "underpayment" in this case occurred because the appellants, having elected in December 1986 to treat their taxes under Section 333, instead prepared their tax return the following April as if they had either elected Section 331 or made a simple sale of stock unaccompanied by a liquidation. Under the circumstances, and absent a compelling explanation to the contrary, one might-as the Tax Court appears to have done in its Supplemental
 
 
 30
 Memorandum Opinion-infer that the "switch" here was deliberate, since making it promised to save the appellants some $24,000, and since the appellants obscured the de facto revocation of their previous election by describing the distribution as a "sale" rather than a liquidation, and by neglecting to attach Form 964 to their return. But the negligence penalty was appropriate even if the switch was accidental; like the Tax Court, we see nothing reasonable about a certified public accountant's failure to calculate his tax liability in accordance with his own election and the Code's explicit instructions.[2]
 
 
 31
 The IRS also added $6,198 under 26 U.S.C. § 6661(a). Section 6661(a) imposes a 25% addition to an underpayment if "there is a substantial understatement of income tax for any taxable year." Section 6661(b)(1)(A) defines a substantial understatement as one that exceeds the greater of (1) 10% of the tax for the year or (2) $10,000. Section 6661(b)(2)(B) reduces the understatement by any amount attributable to (i) the tax treatment of an item if there was "substantial authority" for the treatment, or (ii) any item with respect to which the relevant facts affecting its tax treatment are adequately disclosed in the return or a statement attached to it.
 
 
 32
 The appellants understated their taxes by more than $24,000, which was almost 50% of the tax for the year. However, they claim to have satisfied the disclosure requirement with respect to the entire understatement because, when they made the election in December 1986, they filed Forms 964 and 966 with the IRS. But this "disclosure" was inadequate for two reasons. First, it was not made on the return or on a statement attached to the return. 26 C.F.R. § 1.6661-4(a) and (b). Second, filing a Form 964 at the time of liquidation, nearly four months before a tax return is due, is not an act that "reasonably may be expected to apprise the Internal Revenue Service of the identity of the item, its amount, and the nature of the potential controversy concerning the item." 26 C.F.R. § 1.6661-4(b)(1)(iv) and § 1.6661-4(b)(4). That is precisely why the regulations require the shareholder to file Form 964 twice-once upon making the election and again with his income tax return. 26 C.F.R. §§ 1.333-3 and 1.333-6(a)(5).
 
 
 33
 The IRS has the authority to waive all or part of a Section 6661 addition to tax "on a showing by the taxpayer that there was reasonable cause for the understatement ... and that the taxpayer acted in good faith." 26 U.S.C. § 6661(c).
 
 
 34
 The most important factor in waiver decisions is "the extent of the taxpayer's effort to assess [his] proper tax liability under the law...." 26 C.F.R. § 1.6661-6(b).
 
 
 35
 We review the IRS' waiver decision only for abuse of discretion. Heasley v. Commissioner, 902 F.2d 380, 385 (5th Cir. 1990); Mailman v. Commissioner, 91 T.C. 1079, 1083-84 (1988). For the reasons already stated, we are confident that the IRS did not abuse its discretion by concluding that reasonable people acting in good faith would not (a) fail to pay the tax in accordance with their election, and (b) fail to notify the IRS that they were, in effect, revoking that election.
 
 
 36
 The appellants' Motion for Oral Argument is denied.
 
 
 37
 The judgment of the Tax Court is affirmed.
 
 
 
 [1]
 For the same reason, a check received from a second client in March 1987 was not part of the distribution of corporate assets because it represented payment of Mr. Johnson's monthly retainer for January, February, and March 1987-i.e., money earned after the dissolution by Mr. Johnson, not by the corporation
 
 
 [2]
 Ms. Lyon's reliance on her husband's expertise does not excuse her negligence. Although Section 6653(b), which authorizes an addition to tax for fraud, contains a "special rule for joint returns" that allows the IRS to penalize a spouse only to the extent that the underpayment is due to her own fraud, 26 U.S.C. § 6653(b)(3), Section 6653(a), which authorizes the penalty for negligence, contains no such qualification. See Langer v. Commissioner, 59 T.C.M. 740 (1990) (sustaining negligence penalty against both spouses where husband, an IRS agent, prepared the erroneous return)